**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON SMIETANA and | ) | |
| SKYCOIN GLOBAL FOUNDATION LIMITED, | ) | |
| a Singapore company, and SYMBOLIC | ) | |
| ANALYTICS INC.   a Delaware Corporation | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| BRADFORD STEPHENS, | ) | |
| AARON KUNSTMAN, | ) | |
| HARRISON GEVIRTZ, f/k/a "HaRRo", | ) | **JURY DEMANDED** |
| RYAN EAGLE, ANDREW YOUNG, | ) | |
| FAR AHEAD MARKETING, | ) | |
| JOEL WAYNE CUTHRIELL f/k/a "JOEL", | ) | |
| MORGAN PECK, TRISTAN GREENE, | ) | |
| BRYAN CLARK, CATHERINE BYERLY, | ) | |
| STEVEN LEONARD, JOSH OGLE, and | ) | |
| UNKNOWN INDIVIDUALS AND COMPANIES | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT AT LAW**

NOW COME Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN

GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS,

INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael

C. Goode, for their Complaint against Defendants, Bradford Stephens, Aaron Kunstman, Harrison

Gevirtz f/k/a "HaRRo", Ryan Eagle, Andrew Young, Far Ahead Marketing, Joel Wayne Cuthriell

f/k/a "JOEL", f/k/a "Caribou", Morgan Peck, Tristan Greene, Bryan Clark, Catherine Byerly,

Steven Leonard, Josh Ogle, and *UNKNOWN INDIVIDUALS AND COMPANIES,* states as

follows:

## PARTIES

1.      SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company ("Skycoin"), is a consortium of related entities involved in the development of software, hardware, design, manufacturing and services operating under the consumer brand name "Skycoin", which includes Skycoin Global Foundation, a Singapore Company ("SGF"), Skycoin Foundation, a Singapore Company ("SF"), Symbolic Analytics Inc., a Delaware Corporation ("SA"), Shellpay China, a Chinese Company, as well as other entities that are responsible for regional operations or management of specific aspects of Skycoin's global operations.

2.      Skycoin created 100 million Skycoin Tokens during its launch in 2013, which were distributed and traded on various exchanges by 2017.

3.      The peak market capitalization of all existing Skycoin Tokens reached $5 Billion U.S. Dollars in January 2018.

4.      Defendants Bradford Stephens ("Stephens") and Harrison Gervitz ("Gervitz"), recognizing the success of Skycoin, devised a plan and scheme to defraud, extort and steal money and assets from Skycoin in concert with some or all of the other named Defendants in this Complaint.

5.      Plaintiff Skycoin Global Foundation Limited (hereinafter "Skycoin") is a private company organized under the laws of Singapore, having a principal place of business located at 2 Venture Drive, #11-31, Vision Exchange, Singapore.

6.      Plaintiff Symbolic Analytics (hereinafter "SA") is a private company organized under the laws of Delaware in the United States.

2

7.      Plaintiff Brandon Smietana ( hereinafter "Smietana" or "Synth"), is an individual citizen of the United States of America who is the Chief Software Architect and authorized representative of Skycoin Global Foundation and Symbolic Analytics.

8.      Defendant Bradford Stephens (hereinafter "Stephens"), is an individual citizen of the State of Illinois, U.S.A and residing in the City of Chicago.

9.      Defendant Ryan Eagle (hereinafter "Eagle"), is an individual citizen of the State of Illinois, U.S.A. and residing in Buffalo Grove.

10.      Defendant Harrison Gevirtz (hereinafter "Gevirtz" or HaRRo) is an individual citizen of either the State of New York or the State of California in the U.S.A.

11.      On information and belief, at all relevant times herein, Gevirtz has been the super administrator and/or owner of *blackhatsworld.com*, a hacking website. Gevirtz is involved in all activities of Stephens, by Stephens own admission.

12.      Defendant Andrew Young ( hereinafter "Young"), is an individual citizen of the State of New York in the U.S.A. and is believed to be residing therein.

13.      Defendant Joshua Ogle ( hereinafter "Ogle"), is an individual citizen of the State of New York.  On information and belief, Ogle is the owner of Far Ahead Marketing.

14.      Defendant  Steven Leonard (hereinafter "Leonard"), is an individual citizen of the State of New York who maintains his residence in the State of Florida. Pursuant to Fed. R. Civ. P. 11(b)(3), the factual contentions in this paragraph have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or during discovery.

15.      On information and belief, Defendant Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou" ( hereinafter "Cuthriell"), is an individual citizen of the State of Oklahoma.

16.     Defendant Far Ahead Marketing ( hereinafter "FAM") is a company organized under the laws of the State of California but maintains its  principal place of business in Chicago, Illinois and New York.

17.     On information and belief, at all relevant times herein, FAM has been owned and/or controlled by Josh Ogle.

18.     Defendant Aaron Kunstman,( hereinafter "Kuntsman"), is an individual citizen of the State of Wisconsin who is residing in the City of Milwaukee.

19.     "Sudo" is a network of similarly named Telegram accounts, operated by a minimum of four persons. At least one of these persons is known to be Kuntsman. Bradford Stephens is widely believed to also be one of the account operators. The other two or more operators are currently unknown.

20.     Defendant Eagle Web Assets, Inc. ( hereinafter "EWA") is an Illinois corporation with its principal place of business in Cook County, Illinois and was involuntarily dissolved on August 9, 2013.

21.     On information and belief, despite being dissolved, Eagle and/or Gevirtz continued doing business as EWA.

22.     At all relevant times herein, Eagle continued to serve as registered agent for EWA, and EWA maintained a registered office, in Cook County, Illinois.

23.     At all relevant times, Defendant Eagle was the founder, President, Secretary and a Director of EWA.

24.     On information and belief, at all relevant times, EWA has been owned and/or controlled by Defendants Eagle and/or Gevirtz.

25.     Defendant Catherine Byerly (hereinafter "Byerly") is a resident of Florida.

4

26.     Defendant Tristian Greene (hereinafter "Greene") is a privately paid freelance journalist and is a resident of Chicago.

27.     Defendant Bryan Clarke (hereinafter "Clarke") is a privately paid freelance journalist and is a resident of New York.

28.     Defendant Morgan Peck ( hereinafter "Peck") is a privately paid freelance journalist and a resident of New York.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) since the district courts have original jurisdiction of all civil actions arising under the laws of the United States and Plaintiff has asserted a claim under federal law, 18 U.S.C. § 1964 (RICO).

30.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1), 1332(a)(2) and 1332(a)(3) given that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and in addition thereto, this civil action is between (a) citizens of different States (28 U.S.C. § 1332(a)(1)),(b) citizens of a State and a citizen or subject of a foreign state who are not domiciled in the same state (29 U.S.C. § 1332(a)(2)), and/or (c) citizens of different States and in which a citizen or subject of a foreign state is an additional party (28 U.S.C. § 1332(a)(3)).

31.     This Court has subject matter jurisdiction over this matter pursuant to Plaintiff's federal trade secret claim pursuant to the Defend Trade Secrets Act, 18 U.S.C. §§1836-39 et seq., and 28 U.S.C. §1331 and §1343.

32.     This Court may exercise supplemental subject matter jurisdiction over Count II through Count VI and Count VIII through Count XIII pursuant to 28 U.S.C. §§ 1367 because the claims arise out of the same core or nucleus of operative fact as the other claims and are so related to those claims that they form part of the same case or controversy.  The Plaintiffs also have a common interest in one or more of the claims.

33.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) because several of the Defendants reside in the Northern District of Illinois, and pursuant to 28 U.S.C. § 1391(b)(2) considering that a substantial part of the events or omissions giving rise to the claims alleged herein occurred in said district.

34.     Venue is likewise proper in this judicial district pursuant to 18 U.S.C. § 1965. Section 1965(b) of RICO provides that process may be served in "any judicial district of the United States" when required by the "ends of justice" and courts have held that such "nationwide service of process" provisions also confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimum contacts with the United States. The Defendants have minimum contacts with the State of Illinois and the United States.

## FACTS COMMON TO ALL COUNTS

35.     On or about January 8, 2018, Plaintiffs entered into discussions with Defendant Stephens  and Defendant Gervirtz to develop, launch and manage a comprehensive marketing and brand awareness program for Skycoin, including, but not limited to, revamping the Skycoin website, performing search engine optimization services ("SEO") and generating positive publicity for Skycoin (the "Marketing Program").

36.     On or about January 8, 2018, Stephens represented himself to be the owner of Smolder LLC, a marketing startup company and the company to whom the payments would be made.

37.     Unbeknownst to Plaintiffs, Defendants Stephens and Gervitz were prohibited from engaging in activities such as the Marketing Program pursuant to an FTC Order (*Federal Trade Commission v. CPA TANK, INC., VITO GLAZERS, EAGLE WEB ASSETS INC., and RYAN EAGLE*, Case No: 14-cv-1239 dated February 19, 2014).

38.     At all relevant times herein, Defendants were aware of the fact that, under this Order, payments could not be made to them for marketing activities.

39.     Defendants, Stephens and Gervitz, failed to inform Plaintiffs of the existence of that Order, and violated that Order by offering to provide marketing services to Plaintiffs.

40.     If Plaintiffs had known about the existence of the FTC Order and/or Defendants had not lied and concealed the FTC Order, Plaintiffs would not have entered into the Agreement with Stephens and Gervitz.

41.     Plaintiffs reached an agreement with Stephens and Gervitz to implement the Marketing Program, and as part and parcel of that agreement, paid Bradford and Gervirtz $107,948.00 ($66,258.00 in the form of four (4) Bitcoins and $41,690.00 in the form of 1,100 Skycoin) (the "Initial Payment"). This Initial Payment included an expense budget for an upcoming industry conference in Las Vegas, Nevada. There was an explicit agreement that any expense in excess of $1,000.00 would require prior approval from Skycoin.

42.     In addition to the aforementioned payments, Plaintiffs paid approximately $800,000.00 in Skycoin tokens to Defendants Stephens and Gervitz for an internet advertising campaign. ~~through their alias Smolder.~~

43.     Shortly after the Initial Payment, Stephens submitted two additional invoices for certain work allegedly performed by Byerly totaling approximately $14,752.44 dollars. (the "Byerly Payment)

44.     On or about January 12, 2018, Stephens and Defendant Byerly notified Plaintiffs of a potential crisis they discovered that would critically impact Skycoin's business, marketing, and internet presence.  As represented by Stephens and Byerly, an unknown third party was presumably targeting Sycoin by linking pornographic blogs and other harmful spam content to Skycoin's website.  Linking this undesired content to Skycoin's website would function to decrease Skycoin's website's ranking precipitously in search engines and irrevocably destroy Skycoin's image, reputation and internet presence.

45.     In order to combat the internet assault by these third parties, Stephens and Gervitz indicated that an additional $38,000.00 would be required.

46.     On or about January 14, 2018 and January 19, 2018, Skycoin paid Stephens and Gervitz $38,000.00 to combat the internet assault as was requested.

47.     In early February of 2018, Skycoin learned that in actuality, there was no third party.  Setphens and Gervitz actually instigated the attack themselves as a fraudulent means to extract additional funds from Skycoin.  The invoices submitted by Stephens and Gervitz were fabricated.  Gervitz's and Stephens' attack on the Skycoin website damaged Skycoin's search engine optimization (SEO) ranking and effectively significantly reduced internet traffic to Plaintiff's website.

48.     As part of the Marketing Program, Skycoin made the following payments to Stephens and Gervitz during January of 2018:

8

    a.   On January 11, 2018. $842,400.00 in the form of 20,000 Skycoin tokens for the Marketing Program budget;

    b.   On January 13, 2018, $14,314.00 in the form of one (1) Bitcoin as a budget for a conference in Miami, Florida;

    c.   On January 16, 2018, $121,337.00 in the form of 3,899 Skycoin tokens as part of the Marketing Program budget; and

    d.   On January 18, 2018, $23,212.00 in the form of two (2) Bitcoins and $80,929.00 in the form of 2,625 Skycoin tokens for labor cost to Stephens and Gervitz for their employees performing work on the Marketing Program.

    e.   On January 19, 2018, $56,457 in the form of four (4) Bitcoins and $14,679 in the form of 1.30 Bitcoin in two separate payments, for the Marketing Program and to fight off the attacks by third parties on Skycoin's website. These services were never performed.

49.    In late January to early February of 2018, Stephens demanded that Skycoin pay $100,000.00 per month to ward off the third party SEO attacks on Skycoin's website. Stephens later increased this $100,000.00 per month demand to $300,000.00 per month in order to quell the attacks.

50.    In early February of 2018, Symbolic Analytics had received deficient invoices which were highly suggestive of fraud. Upon determining that there may be fraud involved in Defendants' billings, Plaintiffs discontinued all additional payments.

51.    On or about February 8, 2018, Gevirtz made statements to Skycoin's IT staff suggesting that he controlled the computers performing the SEO attacks and that they could be stopped and the links damaging Skycoin's website could be removed if the Plaintiffs paid them the money demanded.

52.     Gevirtz made statements to Skycoin's IT staff suggesting that he controlled the computers performing the SEO attacks and that they could be stopped and the links damaging Skycoin's website could be removed if the Plaintiffs paid them the money demanded.

53.     Plaintiffs did not pay these amounts demanded by Stephens.

## DEFENDANTS' EXTORTION

54.     Upon refusal by Skycoin to pay Stephens the monthly payments requested, in or around February of 2018, Stephens and Gervitz met Smietana in Shanghai, China, and in association with Eagle, who was participating by Zoom, threatened to have Skycoin delisted from all exchanges including, for example, Bittrex and Binance, unless Smietana agreed to pay them $30,000,000.00 in Bitcoin and $1,000,000.00 in U.S. Dollars.

55.     Defendants' threats included statements that failure to comply would result in Skycoin's destruction and the price of Skycoin being driven to zero.

56.     Stephens and Gervitz demanded that Stephens be made COO and be put in control of management of the company.

57.     Defendants further demanded that Plaintiffs make Gervirtz CFO and put him in charge of all company accounts in order to create a new company controlled by Gervirtz and Stephens and transfer all assets over to the new company.

58.     Smietana, in fear of Stephens's and Gervitz's threats of financial destabilization of Skycoin, capitulated to their demands, and initiated the first of three (3) extortion payments on or about February 9, 2018, in the amount of $127,000.00 (the "Extortion Payments").

59.     Added factors contributing to Smietana's agreement to pay the Extortion Payments were Gervitz's allusions to connections to organized crime cartels in Eastern Europe

that would employ "unconventional debt collection" methods should Smietana not accede to their demands.

60.     On or about February 22, 2018, Stephens ended his Marketing Program engagement with Plaintiffs under pressure from Skycoin's advisory board because of his association with Gervitz and the discovery of the fraudulent invoicing and business practices.

61.     Plaintiffs requested a refund of the unspent prepayments made for the Marketing Program, however, Stephens and Gervitz refused to return any of said money.

62.     In and around the time Stephens and Gervitz demanded the Extortion Payments from Smietana, they also attempted to hostilely seize control of Skycoin.  Specifically, Stephens and Gervitz threatened to orchestrate the publication of a series of negative and damaging articles through various print and online media sources unless Smietana made Stephens COO of Skycoin and put Gervitz in charge of payroll and accounting. Effectively, a plot to allow Stephens and Gervirtz to take over the company and its assets.

63.     In furtherance of this conspiracy and plan to take over Skycoin, Stephens paid journalist Tristian Greene to write and publish the article entitled "Skycoin: Anatomy of a cryptocurrency scam," February 15, 2018 - 10:47 pm UTC (https://thenextweb.com/news/anatomy-of-a-cryptocurrency-scam-in-the-wild) under an anonymous name.

64.     This negative article caused severe damage to the price of Skycoin Token and to Skycoin's reputation. Stephens openly admitted that he was responsible for paying the journalist to publish the article, but went to Skycoin's investors and claimed that Smietana had ordered him to have a negative article published to intentionally destroy the price of Skycoin Token. Stephens attempted to organize a management and investor revolt, to transfer control of the

11

company to Stephens and Gervirtz, under the pretense that actions Stephens had performed were in fact performed by Smietana.

65.     Greene later cited that same article in another negative Skycoin article on "The Next Web" on "Exclusive: We suspected this shady cryptocurrency project was a scam. Now we're sure of it." [Update] Published March 8, 2018 - 3:22 am UTC, (https://thenextweb.com/news/exclusive-we-suspected-this-shady-cryptocurrency-project-was-a-scam-now-were-sure-of-it).

66.     A key part of Skycoin's business plan was to be listed on the Bittrex Exchange. The Bittrex Exchange is a world-wide trading platform that facilitates real-time order execution of crypto currencies, such as Skycoin.

67.     Skycoin devoted significant resources to obtain a Bittrex listing, which had been negotiated through a third party.

68.     Knowing that Skycoin was about to obtain a Bittrex listing, on or about February 25, 2018, Stephens told Smietana that unless Smietana paid Gervitz, Adam Young, Ryan Eagle and Stephens, he would go to Bittrex and provide them with damaging information about Skycoin to prevent Skycoin from being listed on Bittrex.

69.     Smietana refused to pay the money demanded by Stephens, and Stephens did, in fact, provide untrue damaging information to Bittrex which ultimately led to Skycoin not being listed on the Bittrex Exchange.

70.     Between February 26th 2018 through March 9, 2018, Stephens, Gervirtz and Byerly stole access to Skycoin's media accounts, including but not limited to, Skycoin's Shopify store, Twitter account, Linkedin account, Slack channel account, and accounts

associated with the operation of Skycoin's website. These media accounts were an integral and necessary component of Skycoin's business.

71.     On or about October 18, 2018, Stephens and Gervitz demanded over $150,000.00 for return of Skycoins stolen computer-based assets and media accounts.

72.     On or about May 24, 2018, Binace announced that it would list Skycoin on its exchange. Binance holds itself out as the "world's largest crypto exchange" and is a trading platform where customers can buy and sell cryptocurrencies. It is highly desirable for cryptocurrencies to be listed on the Binance exchange.

73.     On or about June 12, 2018, when Smietana refused to succumb to Stephens' extortion demands, Stephens, Gervitz and Eagle conspired with Yan Xiandong, Li Min, Sam Sing Fond and Sun Fei (hereinafter collectively referred to as the "Assailants") in a plot to kidnap Smietana and his girlfriend, and steal $30,000,000.00 that Stephens claimed he was due from Skycoin.

74.     In furtherance of the conspiracy, the Assailants invaded Smietana's home where they violently beat and tortured Smietana and his pregnant girlfriend for approximately six (6) hours in order to gain access to Smietana's computer systems, Skycoin'ss source code, Skycoin intellectual property, company accounts for operation of bussiness, and cryptocurrency wallets.

75.     Under threats of further violence and death, Smietana provided the passwords to his computer. The Assailants stole the18.88 Bitcoin with a market value of $139,160.33 and 6,466 Skycoin with a market value of $81,018.98, totalling $220,179.31.

76.     During the siege and home invasion, the Assailants called Stephens and complained that they did not find the thousands of Bitcoin promised to them.

**DEFENDANTS' THEFT OF ACCOUNTS**

77.     Prior to Stephens' separation from Skycoin, upon notice of his departure, the company made a list of all accounts to which Stephens had authorized access and terminated his access to those accounts.

78.     Skycoin staff contacted Stephens requesting that he return all company assets, company accounts and to provide accounting statements of expenditures so that Plaintiffs could calculate how much unspent money was due to the company.

79.     Symbolic Analytics staff and members of Skycoin contacted Stephens requesting that he return all company assets, company accounts and to provide accounting statements of expenditures so that Plaintiffs could calculate how much unspent money was due to the company.

80.     Stephens acknowledged that there were unspent funds due back to Plaintiffs, however, instead of returning the money due, Stephens hacked into the various company accounts and began to engage in a series of extortion and fraudulent acts against Skycoin.

81.     Stephens, Gervitz and Bryley changed the passwords to some of the company accounts, locked Skycoin and Symbolic Analytics out of them, and then attempted to extort the Company for an additional $150,000.00.  In addition, Stephens and Gervitz refused to return the unspent money that was prepaid and allocated for marketing services.  The amount due back to the Company was in excess of $800,000.00.

82.     Plaintiffs incurred considerable expense to regain access to the stolen accounts and to migrate the content to the reacquired accounts.  Those accounts included, but are not limited to, the Medium Account, Shopify, Twitter, Skycoin Telegram; @Skycoin Rewards, Facebook and Linkedin.

**DEFENDANTS' UNAUTHORIZED EXPENSES**

14

83.     Defendants Stephens, Gervitz, and Byerly engaged in various schemes to defraud Skycoin and attempted to invoice unapproved, non-business related costs including a Las Vegas prostitute orgy, unsubstantiated ATM withdrawals, personal entertainment costs and what is believed to be money for the purchase of drugs. These expenses were neither approved by Skycoin nor related to any legitimate business activities. (See Exhibit D)

84.     For example, Stephens sent invoices to Skycoin totaling $50,000.00 for cash payments to prostitutes for two days in Las Vegas. Despite several requests, Defendants refused to produce ATM receipts for the $50,000.00 expense, could not explain how the cash was used, could not show that the expenses were business related, could not justify the amount spent and could not produce receipts for any "cash payments."

85.     Defendants Stephens, Gervitz and Bryley billed Symbolic Analytics for subcontractors without seeking prior authorization from Plaintiffs for such payments.

86.     Upon information and belief, defendants Stephens, Gervitz and Byerly engaged in a scheme to defraud by invoicing full time rates for subcontractors employed part time and even invoicing company for non-existent persons.

87.     Defendants Stephens, Gervitz, and Bryley billed for subcontractors work that not only both pre-dated and post-dated the Marketing Program, but which also included full time rates for part time work and also included invoicing from nonexistent subcontractors.

88.     Defendants Stephens, Gervitz and Byerly billed for invalid date periods, such as submitting invoices for billing periods prior to the Marketing Program and work performed for billing periods after the termination of their relationship with Skycoin.

89.     Defendants Stephens, Gervitz and Byerly attempted to bill for costs which had not been submitted to the company for preapproval and made misrepresentations to Skycoin

staff, including Skycoin's head of event, who was responsible for event budgets. Stevens made misrepresentations and claimed that expenses had received approval and that the company had been notified of the expenses, when in fact this was false.

90.     Defendants Stephens, Gervitz  and Byerly attempted to bill the company for unapproved "events" on non-existent dates. Additionally there were several other strong indicators that many or all of the claimed expenses were fraudulent or manufactured.

## JOSHUA OGLE

91.     Joshua Ogle is the owner of Far Ahead Marketing ("FAM") and co-founder of the original agency who contracted with Skycoin on or about May 19, 2019, to provide certain advertising services including Facebook Advertisements.

92.     In 2019, Stephens, Gervirtz, Kuntsman, and Ogle engaged in a conspiracy to defraud Skycoin. They engaged a wikipedia moderator, to delete Skycoin's wikipedia page in a rigged "vote for deletion" where all users voting against deletion, were banned.

93.     Upon information and belief, Defendants then messaged Smietana on Telegram and offered a "Wikipedia Protection Package" costing $180,000 a year, to "protect" Skycoin's wikipedia page against deletion. Company refused payment. As a result, Skycoin's wikipedia page was in-fact deleted.

94.     Upon information and belief, after the deletion of Skycoin's wikipedia article, Joshua Ogle, an associate  of Stephens and Gervitz, approached Skycoin and Smietana and offered marketing services to restore Skycoin's wikipedia page, if Skycoin retained Ogle's marketing firm.

95.     Skycoin and Symbolic Analytics retained Joshua Ogle's marketing firm, without knowing at this time, his relationship and cooperation with Stephens, Gervirtz and Kuntsmants.

In fact, Ogle denied at this time having any contact or relationship with these persons. However, the company later discovered Stephens had previously stated in writing that Gervirtz was "best friends" with Ogle and that Ogle had made misrepresentations about his personal relationships and conflicts of interest.

96.     Ogle knew that we could not have made payments to his marketing firm, had he not made misrepresentations and had conflicts of interests been honestly disclosed. Ogle therefore made misrepresentations in order to obtain payments that would not have otherwise been made.

97.     Upon evidence and belief, Company later received communications showing that Ogle was cooperating and assisting Kuntsman and Stephens in an extortion racket against Skycoin. Ogle approached the company and claimed that he was a "neutral third party" and that he could negotiate and "resolve" the extortion situation. The communications indicate that Ogle was in fact acting in collusion with Kuntsm and Stephens to convince the company to pay the extortion demands, while making misrepresentations to the company about his conflict of interests and lying about, concealing and denying his personal relationships with the involved persons.

98.     Skycoin paid FAM $15,000.00 by wire transfer for such advertising services, however, the work was never performed.

99.     Ogle made numerous misrepresentations about the nature of the services provided in order to defraud Skycoin and Symbolic Analytics. For instance, Ogle invoiced for and provided "reports" showing a "youtube advertising campaign", however there was no indication or evidence that the advertisements were actually ever performed.

100.    On or about June 9, 2019, Skycoin paid FAM $16,000.00 by wire transfer for marketing placements in United States mainstream magazines and other online publications.

101.    Ogle arranged a "paid placements" arrangement, where Ogle would recruit journalists and arrange payments to these journalists for the publication of articles for the promotion of Skycoin. As part of FAM's marketing plan for Skycoin, Ogle introduced Smietana to journalist Morgan Peck ("Peck") in New York in June of 2019.

102.    On or about July 9, 2019, Skycoin paid FAM an additional $10,000.00 by wire transfer for Facebook advertising.   This Facebook advertising was never placed.

103.    On or about July 10, 2019, Skycoin paid FAM $5,000.00 by wire transfer for two press releases.  Ogle made numerous misrepresentations about the press releases and claimed that the press releases were through his personal contacts and the company paid for a "premium" package with additional circulation in higher tier media outlets, but Ogle performed the press releases with a commercial distribution services, instead of providing the type of press release distribution that was agreed upon and paid for. This appears to be a scheme to defraud the company by substituting the press release service purchased for a service sub-standard to what was agreed to and paid for.

104.    On or about September 18, 2019, Skycoin paid FAM $41,000.00 by wire transfer to review its marketing activities in China and to provide guidance on appropriate advertising strategies.  The guidance was to include a report with advice and recommendations regarding the marketing and promotion of Skycoin.

105.    To provide such advice, Ogle flew to China, reviewed Skycoin's operations, however, no written report was provided.  Ogle then demanded more money and claimed that he

would need to fly back to Shanghai and that several tens of thousands of dollars were needed to provide the marketing strategy report.

106.    In October of 2019, Skycoin paid FAM $40,000.00 by wire transfer for bus stop advertising. Bus stop advertisements are ads that are placed on benches and the areas around the benches people use while waiting for public transportation. These bus stop advertisements were in fact never placed.

## BINANCE DELISTING

107.    In and around June of 2020, because Smietana refused to capitulate to his extortion demands, Stephens, in conjunction with Kuntsman and others embarked upon a scheme and plan to delist Skycoin from Binance and effectively destroy Skycoin's reputation and depress Skycoin tokens' market value.

108.    In furtherance of this plan and scheme, Stephens solicited other individuals to make false complaints against Skycoin in order to have Binance delist Skycoin from the exchange. The false complaints they directed others to make to Binance to achieve the delisting are as follows:

a. That Skycoin sells Skycoin tokens customers outside of the Binance exchange but after receiving the funds, never sends those customers the Skycoin tokens for which they paid;

b. That individuals from Skycoin would privately meet with customers and accept payment for Skycoin tokens at 15% below market value;

c. After customers consummated such side transactions, they would immediately "dump" the Skycoin tokens on the market;

d. That Smietana would request that customers privately pay him $1,000,000.00 in Bitcoin or cash for discounted Skycoin tokens that they could then "dump" on the market immediately and achieve a $150,000.00 profit; and

e. That Smietana and Skycoin launders money through customers by promising them an immediate 15%-20% profit through the unauthorized purchase of Skycoin tokens.

109. Upon evidence and belief, Cuhriell and other persons were hired to harass Skycoin and interfere with Skycoin's relationships with exchanges and partners corporations, made public statements in Telegram channels bragging that they had paid journalists to publish articles to slander the company, and even publicly discussed the type and content of false reports that needed to be made against Skycoin in order to achieve a delisting from Binance.

110. As part of his plan and scheme to have Skycoin delisted from Binanace, Stephens, Kuntsmen and Cuthriell also orchestrated having several individuals send repeated complaints to Binance that included allegations of drug use, criminal charges against Smietana and other baseless allegations.

111. As further evidence of the conspiracy, Cuthriel publicly congratulated all those involved in the delisting of Skycoin with the exclamation of "Nice work team" and "PARTY TIME."

## COUNT I: VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)

112. Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 112 of this Count I as if fully set forth herein.

113. This Count is brought by S.A. only.

114. The Defendants in this count are Stephens, Gervitz, Kuntsman and Cuthriell. Each of the Defendants in this count are "persons" pursuant to 18 U.S.C. §1961(3).

115.    As detailed above, these Defendants have conspired to commit a years-long and ongoing pattern of racketeering through their association with each other parties organized under the common purpose of extortion and racketeering activities against Skycoin and SA. Moreover, their association has been ongoing for years for the purpose of obtaining money from and trying to destroy S.A.  Accordingly, this group of Defendants and non-Defendants constitutes an association-in-fact enterprise.

116.    Defendants engaged in a four year campaign of harassment, fraud, extortion and violent threats against both Smietana, SA and "Skycoin".

117.    Upon knowledge and belief, Kunstsmans. Stephens and associates approached Skycoin's competitors and Smietana's personal enemies and received money, to fund a full time harassment and extortion operation, whose operations went on continuously over nearly a four year period and which engaged in dozens of varied and extensive scams, extortion rackets, protection rackets and various types of fraud targeted against SA, Skycoin and Smietana.

118.    Upon knowledge and belief, This operation includes up to 8 persons full time staff, up to 50 persons recruited on a per task basis for specific operations, dedicated IT managers for operation of "bot nets" of hundreds of computer accounts used against Skycoin and Smietana in extortion threats. The operation also included a campaign of hacking Skycoin's corporate accounts, engaging in protection rackets, as well as bribing journalists to write false statements against Skycoin and then blackmailing and extorting the company to stop these acts of harassment.

119.    This enterprise was operated as a full time "marketing operation" and method of generating income and paying salary for its members and all income so derived originated in

21

extortion, marketing manipulation or the solicitation of competitors of Skycoin and/or personal enemies of Smietana.

120.     The persons so engaged in this enterprise openly and publicly admitted that their objective was to "Destroy Skycoin" and to drive the price of Skycoin Token to zero.

121.     Upon evidence and belief, the enterprise even engaged in and induced violent criminal acts against Smietana's person and violent theft of SA's property, in retaliation for failure to pay extortion demands.

122.     Defendants knew they were engaged in racketeering acts. Kuntsmans in private messages explicitly told persons "I am extorting Smietan for $1,000,000" and offered "a cut" to anyone who participated in the enterprise.

123.     These acts of attempted or successful racketeering were multiple, consistently performed by the same persons and occurred continuously for over nearly four years to date and are still on-going.

124.     This enterprise affects interstate commerce in that its members are located in different states and nations and work together to achieve a common purpose.  It has been responsible for sending significant sums of money through the wires across state lines.

125.     The frauds detailed above also constitute violations of the wire fraud statute, 18 U.S.C. §1343.  The wire fraud violations are based upon many communications and wire transfers between these Defendants in Illinois and Wisconsin and S.A. in Nevada, California, Singapore and China.  These violations formed various schemes to defraud S.A. of money.

126.     In addition, the extortion schemes detailed above constitute violations of the 18 U.S.C. §1951, the Hobbs Act, which prohibits the obtaining of property through the use of fear, force or violence.

127.    The theft of trade secrets alleged above violates 18 U.S.C. §1832, which is a form of "racketeering activity."

128.    Taken together, these "predicate acts" constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).  Specifically, this is an "open pattern" as it is the regular way the Defendants and the enterprise do business and will not stop without judicial intervention.  In short, S.A. will continue to be harmed by further extortion and extortion attempts in the future.

129.    Under 18 U.S.C. §1962(c), it is unlawful for any person to conduct or participate in the conduct of the affairs of an enterprise that is engaged in or affects interstate or foreign commerce through a pattern of racketeering activity.

130.    18 U.S.C §1962(d) states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection (c) of this section." As detailed above, the Defendants have agreed to the commission of the schemes and have executed the schemes by virtue of an agreement to conduct an ongoing campaign against S.A. Therefore, the Defendants have violated 18 U.S.C. §1962(d) by agreeing to violate 18 U.S.C. §1962(c), by participating in the affairs of the association-in-fact enterprise through a pattern of racketeering activity.

131.    The Defendants are jointly and severally liable for damages.

132.    This pattern of racketeering has damaged S.A. in excess of  $75,000.   These damages were directly and proximately caused by the Defendants' pattern of racketeering against SA.

133.    Accordingly, S.A. demands judgment against each of the Defendants for three times its damages plus prejudgment interest pursuant to 18 U.S.C. §1964(c), a permanent injunction against the Defendants restraining them from further racketeering activity against

S.A. or its officers or employees pursuant to 18 U.S.C. §1964(a), costs, attorneys' fees and any other relief deemed appropriate.

134.    S.A. requests a jury trial.

## COUNT II: FRAUD
## Against Bradford Stephens, Harrison Gevirtz f/k/a "HaRRo," and Catherine Byerly

135.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 135 of this Count II as if fully set forth herein.

136.    Defendants, Stephens and Gevirtz approached Plaintiffs and advertised themselves as a legitimate advertising and marketing firm.  With Stephens, Gervitz, Young and Eagle as "business partners" involved in every aspect of the "business".

137.    Defendants would later learn that these persons came from a company "EWA" which had a history of litigation and that these persons were under an FTC order for fraudulent marketing practices.

138.    Defendants Stephens, Gevirtz, and Byerly represented to Plaintiff Smietana that they would provide advertising and marketing services, including web design, online advertising, conference events, and display advertising.

139.    Defendants Stephens and Gevirtz represented to Plaintiff Smietana that they would provide advertising, web design, and marketing services for Plaintiffs in return for payment.

140.    In reality, Defendants Stephens and Gevirtz had no intention of providing any advertising, web design, or marketing of any kind for Plaintiffs.

141.    Defendants Stephens, Gevirtz, and Byerly, in fact, did not provide any advertising or marketing services for Plaintiffs.

24

142.    Defendants Stephens, Gevirtz, and Byerly never provided any web design services on behalf of Plaintiffs.

143.    In reliance upon the representations of Defendants Stephens, Gevirtz, and Byerly Plaintiffs paid Defendants Stephens, Gevirtz, and Byerly approximately $800,000.00 for their services and the costs of advertising and marketing.

144.    When asked, Defendants represented to Plaintiff Smietana that they had no prior lawsuits that had been filed against them.

145.    These representations were knowingly false when made.

146.    In fact Defendants Stephen's business partners's Gevirtz, Eagle, and Young had an extensive history of litigation and had been named in multiple lawsuits and were subject to an FTC for fraudulent marketing practices.

147.    Following the payment of the initial $800,000.00, Defendants Stephens, Gevirtz, and Byerly requested additional money including an additional $60,000.00.

148.    These statements made by Defendants Stephens, Gevirtz, and Byerly were false when made.

149.    Defendants Stephens, Gevirtz, and Byerly made these representations to Plaintiff Smietana and other Skycoin staff with the intent to induce and  defraud Plaintiffs.

150.    Defendants created scenarios and orchestrated crisis, making  numerous misrepresentations, solely for the purpose of soliciting more money as payment in what has the appearance of a scheme to defraud.

151.    Defendants Stephens, Gevirtz, Eagle, Byerly, and Young made the following misrepresentations and/or omissions upon which Plaintiffs justifiably relied to their detriment:

a. Lied about, concealed and denied history of litigation against defendant's associates, business partners and former corporations;

b. Failed to inform Plaintiffs of the FTC Order and government sanctions against their former company, even when explicitly asked about any history of litigation prior to payment and contract negotiation.

c. Falsely represented that an unknown third party was presumably targeting Sycoin by linking pornographic blogs and other harmful spam content to Skycoin's website;

d. Falsely agreed to seek written pre-approval from the company for incurred expenses;

e. Falsely represented that they would provide marketing and advertisement services to Plaintiffs

f. Falsely representing that they would provide web design services to Plaintiffs;

g. Falsely represented the expenses and costs of said marketing and advertising;

152.    Plaintiffs relied upon the representations of Defendants Stephens, Gevirtz, and Byerly and paid the requested amounts to Defendants.

153.    As a direct and proximate result of Defendants Stephens, Gevirtz, and Byerly's improper actions, Plaintiffs have sustained substantial economic damage through loss of business, loss of revenue, loss of contracts, loss of market visibility, and damage to their reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of

Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants Stephens, Gevirtz, and Byerly for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT III: FRAUD
## Against Josh Ogle

154.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 154 of this Count III as if fully set forth herein.

155.    Joshua Ogle is the owner of Far Ahead Marketing ("FAM") who contracted with Skycoin on or about May 19, 2019, to provide certain advertising services including Facebook Advertisements.

156.    Joshua Ogle, individually and as agent, servant, or employee of FAM, represented that he would provide advertising services, including Facebook Advertisements, marketing placements in United States mainstream magazines and other online publications, press releases, bus stop advertisements, and strategic marketing advice.

157.    These statements were false when made and Defendant Ogle knew them to be false when made.

158.    Skycoin paid FAM $15,000.00 by bitcoin for such advertising services, however, the work was never performed.

159.    On or about June 9, 2019, Skycoin paid FAM $16,000.00 by bitcoin for marketing placements in United States mainstream magazines and other online publications.

160.    As part of FAM's marketing plan for Skycoin, Ogle introduced Smietana to journalist Morgan Peck ("Peck") in New York in June of 2019. In a dinner meeting with Peck,

Ogle and Smietana, Peck confirmed that she would be handling the paid placements for FAM and Ogle.

161.    On or about July 9, 2019, Skycoin paid FAM an additional $10,000.00 by bitcoin for Facebook advertising.   This Facebook advertising was never placed.

162.    On or about July 10, 2019, Skycoin paid FAM $5,000.00 by bitcoin for two press releases.  The press releases never occurred.

163.    On or about September 18, 2019, Skycoin paid FAM $41,000.00 by bitcoin  to review its marketing activities in China and to provide guidance on appropriate advertising strategies.

164.    To provide such advice, Ogle flew to China and reviewed Skycoin's operations. However, no written recommendations were ever provided.  Instead, Ogle and FAM's only advice was to turn over all of Skycoin's marketing exclusively to FAM.

165.    On or about September 18, 2019, Skycoin paid FAM $12,000.00 by wire transfer to create and distribute six (6) press releases.

166.    In October of 2019, Skycoin paid FAM $40,000.00 by wire transfer for bus stop advertising.  Bus stop advertisements are ads that are placed on benches and the areas around the benches people use while waiting for public transportation.  These bus stop advertisements were never placed.

167.    Defendant Joshua Ogle, individually and as agent, servant, or employee of FAM, and Defendant Far Ahead Marketing, individually and by and through its agents, servants, or employees, made the following misrepresentations and/or omissions upon which Plaintiffs justifiably relied to their detriment:

      a.    Misrepresented that they would be providing advertising services to Plaintiff;

b. Misrepresenting the need for additional funds to pay for advertisements that were never placed;

c. Misrepresented that they would provide press releases of the type agreed upon and in the method agreed upon;

d. Misrepresented that they would provide Facebook advertising; and

e. Misrepresented the cost of the advertisements that they were allegedly placing.

168. Plaintiffs relied upon the representations of Defendant Joshua Ogle, individually and as agent, servant, or employee of FAM, and Defendant Far Ahead Marketing, individually and by and through its agents, servants, or employees, and paid the requested amounts to those Defendants.

169. As a direct and proximate result of Defendant Joshua Ogle's, and Defendant Far Ahead Marketing's improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendant Joshua Ogle, individually and as agent, servant, or employee of FAM, and Defendant Far Ahead Marketing, individually and by and through its agents, servants, or employees, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

**COUNT IV: FRAUD**
**Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", Joel**
**Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou"**

170.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 170 of this Count IV as if fully set forth herein.

171.     On or about January 8, 2018, Plaintiffs entered into an agreement with Defendant Stephens, Defendant Gevirtz, Defendant Kunstman, and Defendant Cuthriell wherein these Defendants agreed to provide marketing services for Plaintiffs.

172.     Following that agreement, Defendants Stephens, and Gevirtz defrauded Plaintiffs by failing to provide the contracted services, creating false "threats," and extorting funds from Plaintiffs through coercion.  Once discovered, Plaintiffs attempted to distance themselves from Defendants. However, in retaliation Defendants Bradford Stephens ("Stephens"), Aaron Kunstman ("Kunstman"), Harrison Gevirtz f/k/a "HaRRo" ("Gevirtz"), and Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou" ("Cuthriell") began making false profiles and applications with false information in order to further defraud Plaintiffs out of approximately $2,000,000.00 worth of Skycoin product.

173.     Plaintiffs offered a reward program to entice customers to their business.

174.     In order to obtain a reward, each participant is required to submit an application which conformed to S.A.'s terms and conditions.

175.     Each customer is only allowed to have one active Skywire rewards account within a single one month period.

176.     Each customer is allowed  to claim rewards for up to 8 Skywire nodes in a one month period.

177.    Only one instance of the "Skywire Node" software can be run on a single physical computer.

178.    Each customer may operate only a single reward program account within a one month period

179.    Each computer claiming a reward must be a physically separate and independent computer.

180.    It is a violation of the rewards program terms and service, for a user to run more than one Skywire node per physical computer.

181.    Defendants, Cuthriell and Stephens, developed software, to run over 300 "nodes" on a single physical computer, to defraud the rewards program.

182.    Relying on the misrepresentations, S.A. provided these persons rewards to which they were not entitled,  totaling approximately $1-$3 million, the precise amount is unknown as they have continued to submit these bogus applications.  It is a regular method of the conspirators' business to harass S.A. in this and other ways, and they will not stop without judicial intervention.

183.    Plaintiffs relied upon the information provided in those online applications and profiles.

184.    Had Plaintiffs known that these profiles and applications were being generated and submitted by Defendants Stephens, Kunstman, Gevirtz, and Cuthriell repeatedly in order to accumulate Skycoin under false pretenses, Plaintiffs would not have provided the Skycoin to Defendants Stephens, Kunstman, Gevirtz, and Cuthriell.

185.    Defendants Stephens, Kunstman, Gevirtz, and Cuthriell made these repeated false representations to Plaintiffs through these applications and profiles even though they knew

31

that these statements were false and made under false pretenses with an intent to induce Plaintiffs into providing the $2,000,000.00 in Skycoin.

186.    Defendants Stephens, Kunstman, Gevirtz, and Cuthriell have at all relevant times and still continue to perpetuate and deliberately conceal this fraud from Plaintiffs.

187.    Defendants Stephens, Kunstman, Gevirtz, and Cuthriell have engaged in a scheme to defraud Plaintiffs by consistently attempting to conceal this fraud and continue to submit false applications and profiles to Plaintiffs.

188.    As a direct and proximate result of Defendants Stephens, Kunstman, Gevirtz, and Cuthriell's improper actions and misrepresentations, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

189.    Plaintiffs relied upon the accuracy and truthfulness of the submitted applications and profiles, and, had Plaintiffs been aware that the representations of Defendants Stephens, Kunstman, Gevirtz, and Cuthriell were false, Plaintiffs would not have acted as they did.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants STEPHENS, KUNSTMAN, GEVIRTZ, AND CUTHRIELL for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT V:  CIVIL CONSPIRACY
### Against All Defendants

190.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 190 of this Count V as if fully set forth herein.

191.     Defendants, Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", Ryan Eagle, Andrew Young, Far Ahead Marketing, Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou", Morgan Peck, Tristan Greene, Bryan Clark, Catherine Byerly, Steven Leonard, Josh Ogle, and *UNKNOWN INDIVIDUALS AND COMPANIES* (collectively "Defendants") met and conspired with one another to defraud Plaintiffs, tortiously interfere with their business relationships, commit various acts of wire fraud, computer fraud, and convert Plaintiffs' property surreptitiously.

192.     Defendants worked in concert with one another to accomplish this fraud as evidenced by their various communications and concerted acts against Plaintiffs.

193.     On information and belief, Defendants intended to defraud Plaintiffs out of their money, their product, and to tortiously interfere with their business relationships.

194.     As a direct and proximate result of DEFENDANTS' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

33

**COUNT VI: TORTIOUS INTERFERENCE**
**Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", Ryan**
**Eagle, Andrew Young, Far Ahead Marketing, Joel Wayne Cuthriell f/k/a "JOEL", f/k/a**
**"Caribou", Tristan Greene, Bryan Clark, Catherine Byerly, Steven Leonard, Josh Ogle,**
**and *UNKNOWN INDIVIDUALS AND COMPANIES***

195.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 195 of this Count VI as if fully set forth herein.

196.     Plaintiff SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company ("Skycoin"), is a consortium of related entities involved in the development of software, hardware, design, manufacturing and services operating under the consumer brand name "Skycoin", which includes Skycoin Global Foundation, a Singapore Company ("SGF"), Skycoin Foundation, a Singapore Company ("SF"), Symbolic Analytics Inc., a Delaware Corporation ("SA"), Shellpay China, a Chinese Company.

197.     Plaintiff Symbolic Analytics is a private company that provides support for Skycoin.

198.     Plaintiff Brandon Smietana is the Chief Software Architect and authorized representative of Skycoin Global Foundation and Symbolic Analytics.

199.     These three Plaintiffs developed business relationships and contracts with various vendors and customers since its launch in 2013.

200.     Skycoin sells non-fungible electronic products that fluctuate in value based upon the market rates on specific internet exchanges.

201.     For Skycoin to do business, it must participate in these internet exchange markets, such as, but not limited to, Bittrex, Binance, Kraken, Poloniex and Bifinix, in order to sell its goods.

34

202.     Defendants, Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", Ryan Eagle, Andrew Young, Far Ahead Marketing, Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou", Morgan Peck, Tristan Greene, Bryan Clark, Catherine Byerly, Steven Leonard, Josh Ogle, and *UNKNOWN INDIVIDUALS AND COMPANIES,* orchestrated various schemes to undermine the reputation of Plaintiffs and cause these internet exchange markets, specifically, Bittrex and Binance, to remove Plaintiffs' products from their exchanges (known as "Delisting").

203.     Defendants were fully aware of Plaintiffs' position within these  internet exchange markets.

204.     Defendants were fully aware that Plaintiffs' Skycoin product must be sold on these internet exchange markets.

205.     Defendants were fully aware that Plaintiffs had agreements and/or expected agreements with these internet exchange markets.

206.     Defendants, nonetheless, acted in concert to cause these internet exchange markets to remove Plaintiffs' Skycoin products from those markets.

207.     At all relevant times herein, Defendants intended to cause harm to Plaintiffs' reputation and finances in order to interfere with their relationships with these internet exchange markets, along with their customers and vendors.

208.     As a direct and proximate result of DEFENDANTS' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a

Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT VII: CONVERSION
### Against Steve Leonard

209.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 209 of this Count VII as if fully set forth herein.

210.    Defendant Steve Leonard became aware that Plaintiff, Symbolic Analytics, owned in excess of 180 Bitcoins.

211.    Defendant Steve Leonard converted over 180 Bitcoin owned by Symbolic Analytics and stole that electronic currency without permission or authority.

212.    Upon evidence and belief, Steven Leonard was induced into engaging in this conversion as well as the attempted theft of Skycoin's website as part of a conspiracy by Kuntsman and Stephenss, to recruit disgruntled Skycoin employees in an attempt to cause damage to Skycoin and to induce extortion payments.

213.    Since its conversion, Defendant Leonard has not returned the amount of Bitcoin stolen despite repeated requests for him to do so.

214.    Plaintiff, Symbolic Analytics, is the rightful owner of that Bitcoin.

215.    As a direct and proximate result of DEFENDANT LEONARD'S improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL

FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a

Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C.

Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for

an amount in excess of $75,000.00, and for such other and further relief as this Court may deem

just and fair on the premises.

### COUNT VIII: Violations of the Defend Trade Secrets Act
### Against All Defendants

216.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and

for Paragraph 216 of this Count VIII as if fully set forth herein.

217.    As part of Plaintiffs' business, Plaintiffs developed hardware and software that

worked in conjunction with each other to provide customers with the ability to use and "mine"

Skycoins, while also allowing customers to make initial coin offerings.

218.    The hardware designs were proprietary and only known to Skycoin officers.

219.    The software and corresponding source code allowed Plaintiffs network and

programs to generate, sell, and transfer Skycoin tokens to customers.

220.    Defendants surreptitiously broke into Plaintiffs' source code and computers,

misappropriated the source code for their own use and stole the hardware designs in the hopes

of taking over Plaintiffs' business.

221.    As set forth above, Defendants have misappropriated and used Plaintiffs' Trade

Secret source code and proprietary software architecture, including without limitation

confidential information relating to Plaintiffs' proprietary architecture design, proprietary

software, and internal software methodology ("Plaintiffs' Trade Secrets").

222.    Plaintiffs' Trade Secrets were sufficiently secret and maintained so that only Plaintiffs' principal, Brandon Smietana, was privy to each and every trade secret and their collective uses.

223.    Plaintiffs' Trade Secrets are sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from their disclosure or use.

224.    Plaintiffs have at all relevant times taken steps that are reasonable under the circumstances to maintain the secrecy and confidentiality of their Trade Secrets.

225.    Defendants attained these trade secrets of Plaintiffs by breaching Plaintiffs' software and source code in order to use and disseminate Plaintiffs' Trade Secrets.

226.    Defendants were fully aware that the information comprising Plaintiffs' Trade Secrets were secret, confidential, and maintained in such a way as to prevent disclosure to third parties, and specifically competitors.

227.    Defendants violated the Defend Trade Secrets Act by and through the following acts and omissions:

     a.  Utilizing Plaintiffs' Trade Secrets in Defendants' products, equipment, and within its industry;

     b.  Misappropriating Plaintiffs' proprietary hardware designs;

     c.  Misappropriating Plaintiffs' source code;

     d.  Divulging Plaintiffs' Trade Secrets to third parties; and

     e.  Using improper means to access and misappropriate Plaintiffs' source code.

228. As a direct and proximate result of DEFENDANTS' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT IX: UNJUST ENRICHMENT
### Against All Defendants

229. Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 229 of this Count IX as if fully set forth herein.

230. Defendants were provided approximately $860,000.00 in funds to provide marketing, advertising, and web design services to Plaintiffs.

231. Defendants also obtained approximately $2,000,000.00 in Skycoin product through false reward applications.

232. These funds and goods were not earned and Plaintiffs received no equivalent value for them in return.

233. It would be unconscionable and against fundamental principles of justice, equity and good conscience for Defendants to retain the benefit from those funds, which were paid by Plaintiffs without receiving any benefit in return.

234.    As a direct and proximate result of DEFENDANTS' improper actions, Plaintiffs

have sustained damage economically through loss of business, loss of revenue, loss of contracts,

loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL

FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a

Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C.

Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for

an amount in excess of $75,000.00, and for such other and further relief as this Court may deem

just and fair on the premises.

## COUNT X: DEFAMATION
## Against Morgan Peck

235.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and

for Paragraph 235 of this Count X as if fully set forth herein.

236.    On Aug 18, 2021 an article submitted by Morgen Peck was published in The New

Yorker.  Exhibit "A."

237.    In that article, Morgen Peck lied about Smietana's injuries, even though Peck had

copies of the court proceedings and Smietana had provided his personal medical records to Peck.

238.    Morgen Peck lied about public documents such as court documents, in order to

defame Smietana. Peck claimed that the persons who assaulted Smietana did not serve jail time,

even though she admitted to Smietana that she had copies of the court records and knew that the

assailants were arrested and in fact served jail time.

239.    Kuntsman has publicly stated that Morgen Peck acted with malice, that she had a

personal vendetta against Smietana. Kuntsman and other defendants in communications with

Peck also made statements that Morgen Peck acted with malice and stated that she received payments from the subjects of the article.

240. Defendant Peck went on to suggest that Plaintiff Smietana had been lying and exaggerating about past events.

241. Defendant Peck also attacked Plaintiffs' business in that same article.

242. These statements made by Defendant Peck in the attached article were false when made and Defendant Peck knew or should have known that such statements were false.

243. As a direct and proximate result of DEFENDANT PECK's improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT XI: BREACH OF FIDUCIARY DUTY
### Against All Defendants

244. Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 244 of this Count XI as if fully set forth herein.

245. At various times Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", Ryan Eagle, Andrew Young, Far Ahead Marketing, Joel Wayne

41

Cuthriell f/k/a "JOEL", f/k/a "Caribou", Tristan Greene, Bryan Clark, Catherine Byerly, Steven Leonard, and Josh Ogle were acting as contractors hired by Plaintiffs to perform certain duties.

246. Per that relationship and agreement, Defendants were to adhere to the terms of the agreements and provide the services promised.

247. Defendants instead engaged in various schemes to defraud Plaintiffs.

248. Defendants did not provide the promised services to Plaintiffs, despite Plaintiffs having paid for those services.

249. Defendants had a duty to adhere to the terms of the agreements and to provide Plaintiffs with the promised services.

250. Defendants breached that duty by failing to adhere to the terms of the agreements and failing to provide Plaintiffs with the promised services.

251. As a direct and proximate result of DEFENDANTS' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT XII: BREACH OF CONTRACT
### Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou"

252.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 252 of this Count XII as if fully set forth herein.

253.     On or about January 8, 2018, Plaintiffs entered into an agreement with Defendant Smolder, LLC, Defendant Stephens, Defendant Gevirtz, Defendant Kunstman, and Defendant Cuthriell wherein these Defendants agreed to provide marketing services for Plaintiffs.

254.     Following that agreement, Defendants Smolder, Stephens, and Gevirtz failed to provide the contracted services, creating false "threats," and extorting funds from Plaintiffs through coercion.

255.     Defendants did not adhere to the terms of the Agreement despite payment.

256.     Plaintiffs, at all times relevant herein, fully performed on their obligations under the Agreements with Defendants.

257.     Defendants failed to provide any advertising or marketing services to Plaintiffs during the duration of the contract.

258.     Defendants breached their obligations under the contract through the following acts or omissions:

    a.   failing to provide advertising services;

    b.   Failing to provide marketing services;

    c.   failing to use the funds provided for the advertising or marketing services;

    d.   failing to provide web design services;

    e.   failing to use funds to effectuate any web design;

    f.   failing to stay within the bounds of the expense budget; and

    g.   attempting to extort additional funds outside of the contract terms.

43

259.    As a direct and proximate result of DEFENDANTS' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana") and SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

### COUNT XIII: Violations 720 ILCS 5/12-7.1
### Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo"

260.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 260 of this Count XIII as if fully set forth herein.

261.    On information and belief, during the years 2019 – 2021, Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo," through various internet media and in person made numerous antisemetic statements and threats of death, kidnapping, and other acts of violence against Plaintiff Brandon Smietana.

262.    All of these threats were based on Smietana's religion and Jewish heritage.

263.    Defendants also discussed Plaintiff as a "Jew coin" and other similar hate speech, which Plaintiff perceived as a direct threat due to his being Jewish.

264.    Defendants posted these messages on various social media platforms and also made said threats directly to Plaintiff.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), by and through his

attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court

enter a judgment against DEFENDANTS, Defendants Bradford Stephens, Aaron Kunstman,

Harrison Gevirtz f/k/a "HaRRo," for an amount in excess of $75,000.00, punitive damages, and

for such other and further relief as this Court may deem just and fair on the premises.


Respectfully Submitted,

**BRANDON SMIETANA,**
**SKYCOIN GLOBAL FOUNDATION**
**LIMITED, and SYMBOLIC ANALYTICS**


By:_____/s/Michael C. Goode_____
One of Their Attorneys

Michael C. Goode, Esq.
Michael C. Goode & Company
111 West Washington Street, Suite 1750
Chicago, Illinois 60602
lawoffice_mcgoode@yahoo.com