# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON SMIETANA and | ) | |
| SKYCOIN GLOBAL FOUNDATION LIMITED, | ) | |
| a Singapore company, and SYMBOLIC | ) | |
| ANALYTICS INC.   a Delaware Corporation | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-00708 |
| | ) | |
| v. | ) | |
| | ) | Honorable Sara L. Ellis |
| BRADFORD STEPHENS, | ) | |
| AARON KUNSTMAN, | ) | |
| HARRISON GEVIRTZ, f/k/a "HaRRo", | ) | **JURY DEMANDED** |
| RYAN EAGLE, | ) | |
| FAR AHEAD MARKETING, LLC., | ) | |
| JOEL WAYNE CUTHRIELL f/k/a "JOEL", | ) | |
| MORGEN PECK, CATHERINE BYERLY, | ) | |
| STEVEN LEONARD, JOSHUA OGLE, | ) | |
| CONDÉ NAST d/b/a THE NEW YORKER, | ) | |
| THE NEW YORKER, and | ) | |
| UNKNOWN INDIVIDUALS AND COMPANIES | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SECOND AMENDED COMPLAINT AT LAW

NOW COME Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL

FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a

Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C.

Goode, for their Complaint against Defendants, Bradford Stephens, Aaron Kunstman, Harrison

Gevirtz f/k/a "HaRRo", Ryan Eagle, Far Ahead Marketing, LLC., Joel Wayne Cuthriell f/k/a

"JOEL", f/k/a "Caribou", Morgen Peck, Catherine Byerly, Steven Leonard, Joshua Ogle, Condé

Nast d/b/a The New Yorker, The New Yorker, and *UNKNOWN INDIVIDUALS AND*

*COMPANIES,* states as follows:

## PARTIES

1.      SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company ("Skycoin"), is a consortium of related entities involved in the development of software, hardware, design, manufacturing and services operating under the consumer brand name "Skycoin", which includes Skycoin Global Foundation, a Singapore Company ("SGF"), Skycoin Foundation, a Singapore Company ("SF"), Symbolic Analytics Inc., a Delaware Corporation ("SA"), Shellpay China, a Chinese Company, as well as other entities that are responsible for regional operations or management of specific aspects of Skycoin's global operations.

2.      Skycoin created 100 million Skycoin Tokens during its launch in 2013, which were distributed and traded on various exchanges by 2017.

3.      The peak market capitalization of all existing Skycoin Tokens reached $5 Billion U.S. Dollars in January 2018.

4.      Defendants Bradford Stephens ("Stephens") and Harrison Gevirtz ("Gevirtz"), recognizing the success of Skycoin, devised a plan and scheme to defraud, extort, and steal money and assets from Skycoin in concert with some or all of the other named Defendants in this Complaint.

5.      Plaintiff Skycoin is a private company organized under the laws of Singapore, having a principal place of business located at 2 Venture Drive, #11-31, Vision Exchange, Singapore.

6.      Plaintiff Symbolic Analytics (hereinafter "SA") is a private company organized under the laws of Delaware in the United States.

2

7.     Plaintiff Brandon Smietana (hereinafter "Smietana" or "Synth"), is an individual citizen of the United States of America who is the Chief Software Architect and authorized representative of Skycoin Global Foundation and Symbolic Analytics.

8.     Defendant Bradford Stephens (hereinafter "Stephens"), is an individual citizen of the State of Illinois, U.S.A and residing in the City of Chicago.

9.     Defendant Ryan Eagle (hereinafter "Eagle"), is an individual citizen of the State of Illinois, U.S.A. and residing in the Village of Buffalo Grove.

10.     Defendant Harrison Gevirtz (hereinafter "Gevirtz" or "HaRRo") is an individual citizen of either the State of New York or the State of California in the U.S.A.

11.     On information and belief, at all relevant times herein, Gevirtz has been the administrator and/or owner of *blackhatsworld.com*, a hacking website.

12.     Defendant Joshua Ogle (hereinafter "Ogle"), is an individual citizen of the State of New York.  On information and belief, Ogle is the owner of Far Ahead Marketing.

13.     On information and belief, Defendant  Steven Leonard (hereinafter "Leonard"), is an individual citizen of the State of New York who maintains his residence in the State of Florida.

14.     On information and belief, Defendant Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou" (hereinafter "Cuthriell"), is an individual citizen of the State of Oklahoma.

15.     Defendant Far Ahead Marketing, LLC (hereinafter "FAM") is a Wyoming Limited Liability Company but maintains its  principal place of business in New York, New York.

16.     On information and belief, at all relevant times herein, FAM has been owned and/or controlled by Joshua Ogle.

17.     Defendant Aaron Kunstman, (hereinafter "Kunstman"), is an individual citizen of the State of Wisconsin who is residing in the City of Milwaukee.

18.    "Sudo" is a network of similarly named Telegram accounts, operated by a minimum of four persons. At least one of these persons is known to be Kunstman. Bradford Stephens is widely believed to also be one of the account operators. The other two or more operators are currently unknown.

19.    Defendant Eagle Web Assets, Inc. (hereinafter "EWA") is an Illinois corporation with its principal place of business in Cook County, Illinois and was involuntarily dissolved on August 9, 2013.

20.    On information and belief, despite being dissolved, Eagle and/or Gevirtz continued doing business as EWA.

21.    At all relevant times herein, Eagle continued to serve as registered agent for EWA, and EWA maintained a registered office, in Cook County, Illinois.

22.    At all relevant times, Defendant Eagle was the founder, President, Secretary, and a Director of EWA.

23.    On information and belief, at all relevant times, EWA has been owned and/or controlled by Defendants Eagle and/or Gevirtz.

24.    Defendant Catherine Byerly (hereinafter "Byerly") is a resident of Florida.

25.    Defendant Morgen Peck (hereinafter "Peck") is a privately paid freelance journalist and a resident of New York.

26.    Defendant Condé Nast is a global mass media company in the business of producing world leading print, digital, video and social media brands organized under the laws of the state of New York.

27.    Defendant The New Yorker is a prominent American weekly magazine owned and operated by Defendant Condé Nast.

28.     On August 28, 2021, Peck authored an article published in The New Yorker titled *Pumpers, Dumpers, and Shills: The Skycoin Saga.* The article can be found on https://www.newyorker.com/tech/annals-of-technology/pumpers-dumpers-and-shills-the-skycoin-saga. (See Appendix A)

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) since the district courts have original jurisdiction of all civil actions arising under the laws of the United States and Plaintiff has asserted a claim under federal law, 18 U.S.C. § 1964 (RICO).

30.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1), 1332(a)(2) and 1332(a)(3) given that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and in addition thereto, this civil action is between (a) citizens of different States (28 U.S.C. § 1332(a)(1)),(b) citizens of a State and a citizen or subject of a foreign state who are not domiciled in the same state (29 U.S.C. § 1332(a)(2)), and/or (c) citizens of different States and in which a citizen or subject of a foreign state is an additional party (28 U.S.C. § 1332(a)(3)).

31.     This Court has subject matter jurisdiction over this matter pursuant to Plaintiffs' federal trade secret claim pursuant to the Defend Trade Secrets Act, 18 U.S.C. §§1836-39 et seq., and 28 U.S.C. §1331 and §1343.

32.     This Court may exercise supplemental subject matter jurisdiction over Count II through Count VI and Count VIII through Count XIII pursuant to 28 U.S.C. §§ 1367 because the claims arise out of the same core or nucleus of operative fact as the other claims and are so related

to those claims that they form part of the same case or controversy. The Plaintiffs also have a common interest in one or more of the claims.

33.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) because several of the Defendants reside in the Northern District of Illinois, and pursuant to 28 U.S.C. § 1391(b)(2) considering that a substantial part of the events or omissions giving rise to the claims alleged herein occurred in said district.

34.     Venue is likewise proper in this judicial district pursuant to 18 U.S.C. § 1965. Section 1965(b) of RICO provides that process may be served in "any judicial district of the United States" when required by the "ends of justice" and courts have held that such "nationwide service of process" provisions also confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimum contacts with the United States. The Defendants have minimum contacts with the State of Illinois and the United States.

## FACTS COMMON TO ALL COUNTS

35.     On or about January 8, 2018, Plaintiffs entered into discussions with Defendant Stephens and Defendant Gevirtz to develop, launch, and manage a comprehensive marketing and brand awareness program for Skycoin, including, but not limited to, revamping the Skycoin website, performing search engine optimization services ("SEO") and generating positive publicity for Skycoin (the "Marketing Program").

36.     On or about January 8, 2018, Stephens represented himself to be the owner of Smolder LLC, a marketing startup company and the company to which the payments would be made for the Marketing Program.

37.     Unbeknownst to Plaintiffs, Defendants Stephens and Gevirtz were prohibited from engaging in activities such as the Marketing Program pursuant to an FTC Order ("Order") (See

*Federal Trade Commission v. CPA TANK, INC., VITO GLAZERS, EAGLE WEB ASSETS INC., and RYAN EAGLE*, Case No: 14-cv-1239 dated February 19, 2014).

38.     At all relevant times herein, Defendants were aware of the fact that, under the Order, payments could not be made to them for marketing activities.

39.     Defendants Stephens and Gevirtz failed to inform Plaintiffs of the existence of that Order, and further violated the Order by offering to provide marketing services to Plaintiffs.

40.     If Plaintiffs had known about the existence of the FTC Order and/or Defendants had not lied and concealed the FTC Order, Plaintiffs would not have entered into an oral agreement with Stephens and Gevirtz.

41.     Plaintiffs reached an oral agreement with Stephens and Gevirtz to implement the Marketing Program, and as part and parcel of that agreement, paid Bradford and Gevirtz $107,948.00 ($66,258.00 in the form of four (4) Bitcoins and $41,690.00 in the form of 1,100 Skycoin) (the "Initial Payment"). This Initial Payment included an expense budget for an upcoming industry conference in Las Vegas, Nevada. There was an explicit agreement that any expense in excess of $1,000.00 would require prior approval from Skycoin.

42.     In addition to the aforementioned payments, Plaintiffs paid approximately $800,000.00 in Skycoin Tokens to Defendants Stephens and Gevirtz for an internet advertising campaign.

43.     Shortly after the Initial Payment, Stephens submitted two additional invoices for certain work allegedly performed by Byerly totaling approximately $14,752.44 (the "Byerly Payment").

44.     On or about January 12, 2018, Defendants Stephens and Byerly notified Plaintiffs of a potential crisis they discovered that would critically impact Skycoin's business, marketing,

and internet presence. As represented by Defendants Stephens and Byerly, an unknown third party was presumably targeting Sycoin by linking pornographic blogs and other harmful spam content to Skycoin's website. Linking this undesired content to Skycoin's website would function to decrease Skycoin's website's ranking precipitously in search engines and irrevocably destroy Skycoin's image, reputation, and internet presence.

45.     In order to combat the internet assault by these third parties, Defendants Stephens and Gevirtz indicated that an additional $38,000.00 would be required.

46.     On or about January 14, 2018 and January 19, 2018, Skycoin paid Defendants Stephens and Gevirtz $38,000.00 to combat the internet assault issue.

47.     In early February of 2018, Skycoin learned that in actuality, there was no third party. Defendants Stephens and Gevirtz actually instigated the attack themselves as a fraudulent means to extract additional funds from Skycoin. The invoices submitted by Defendants Stephens and Gevirtz were fabricated. Gevirtz's and Stephens' attack on the Skycoin website damaged Skycoin's search engine optimization (SEO) ranking and effectively significantly reduced internet traffic to Plaintiffs' website.

48.     As part of the Marketing Program, Skycoin made the following payments to Defendants Stephens and Gevirtz during January of 2018:

  A.  On January 11, 2018. $842,400.00 in the form of 20,000 Skycoin Tokens for the Marketing Program budget;

  B.  On January 13, 2018, $14,314.00 in the form of one (1) Bitcoin as a budget for a conference in Miami, Florida;

  C.  On January 16, 2018, $121,337.00 in the form of 3,899 Skycoin Tokens as part of the Marketing Program budget; and

D. On January 18, 2018, $23,212.00 in the form of two (2) Bitcoins and $80,929.00 in the form of 2,625 Skycoin Tokens for labor cost to Stephens and Gevirtz for their employees performing work on the Marketing Program.

E. On January 19, 2018, $56,457 in the form of four (4) Bitcoins and $14,679 in the form of 1.30 Bitcoin in two separate payments, for the Marketing Program and to fight off the attacks by third parties on Skycoin's website. These services were never performed.

49. In late January to early February of 2018, Stephens demanded that Skycoin pay $100,000.00 per month to ward off the third party SEO attacks on Skycoin's website. Defendant Stephens later increased this $100,000.00 per month demand to $300,000.00 per month in order to quell the attacks.

50. In early February of 2018, Symbolic Analytics had received deficient invoices which were highly suggestive of fraud. Upon determining that there may be fraud involved in Defendants' billings, Plaintiffs discontinued all additional payments.

51. On or about February 8, 2018, Defendant Gevirtz made statements to Skycoin's IT staff suggesting that he controlled the computers performing the SEO attacks and that they could be stopped and the links damaging Skycoin's website could be removed, if Plaintiffs paid them the money demanded.

52. Plaintiffs did not pay these amounts demanded by Defendant Stephens.

**DEFENDANTS' EXTORTION**

53. Upon refusal by Skycoin to pay Defendant Stephens the monthly payments requested, in or around February of 2018, Defendants Stephens and Gevirtz met Plaintiff Smietana in Shanghai, China, and in association with Defendant Eagle, who was participating by Zoom, threatened to have Skycoin delisted from all exchanges including, for example, Bittrex

and Binance, unless Smietana agreed to pay them $30,000,000.00 in Bitcoin and $1,000,000.00 in U.S. Dollars.

54.     Defendants' threats included statements that failure to comply would result in Skycoin's destruction and the price of Skycoin being driven to zero.

55.     Defendants Stephens and Gevirtz demanded that Defendant Stephens be made COO and be put in control of management of the company.

56.     Defendants further demanded that Plaintiffs make Defendant Gevirtz CFO and put him in charge of all company accounts in order to create a new company controlled by Defendants Gevirtz and Stephens and transfer all assets over to the new company.

57.     Smietana, in fear of Defendants Stephens's and Gevirtz's threats of financial destabilization of Skycoin, capitulated to their demands, and initiated the first of three (3) extortion payments on or about February 9, 2018, in the amount of $127,000.00 (the "Extortion Payments").

58.     Added factors contributing to Smietana's agreement to pay the Extortion Payments were Defendant Gevirtz's allusions to connections to organized crime cartels in Eastern Europe that would employ "unconventional debt collection" methods should Smietana not accede to their demands.

59.     On or about February 22, 2018, Stephens ended his Marketing Program engagement with Plaintiffs under pressure from Skycoin's advisory board because of his association with Defendant Gevirtz and the discovery of the fraudulent invoicing and business practices.

60.     Plaintiffs requested a refund of the unspent prepayments made for the Marketing Program, however, Defendants Stephens and Gevirtz refused to return any of said money.

61.     In and around the time Defendant Stephens and Defendant Gevirtz demanded the Extortion Payments from Smietana, they also attempted to hostilely seize control of Skycoin. Specifically, Defendants Stephens and Gevirtz threatened to orchestrate the publication of a series of negative and damaging articles through various print and online media sources unless Smietana made Defendant Stephens COO of Skycoin and put Defendant Gevirtz in charge of payroll and accounting. Effectively, a plot to allow Defendants Stephens and Gevirtz to take over the company and its assets.

62.     In furtherance of this conspiracy and plan to take over Skycoin, Stephens paid journalist Tristian Greene ("Greene") to write and publish the article entitled "Skycoin: Anatomy of a cryptocurrency scam," February 15, 2018 - 10:47 pm UTC (https://thenextweb.com/news/anatomy-of-a-cryptocurrency-scam-in-the-wild) under an anonymous name.

63.     The negative article caused severe damage to the price of Skycoin Tokens and to Skycoin's reputation. Defendant Stephens openly admitted that he was responsible for paying the journalist to publish the article, but went to Skycoin's investors and claimed that Smietana had ordered him to have a negative article published to intentionally destroy the price of Skycoin Token. Defendant Stephens attempted to organize a management and investor revolt, to transfer control of the company to Defendants Stephens and Gevirtz, under the pretense that actions Defendant Stephens had performed were in fact performed by Smietana.

64.     Greene later cited that same article in another negative Skycoin article on "The Next Web" on "Exclusive: We suspected this shady cryptocurrency project was a scam. Now we're sure of it." Published March 8, 2018 - 3:22 am UTC,

(https://thenextweb.com/news/exclusive-we-suspected-this-shady-cryptocurrency-project-was-a-scam-now-were-sure-of-it).

65.     A key part of Skycoin's business plan was to be listed on the Bittrex Exchange. The Bittrex Exchange is a world-wide trading platform that facilitates real-time order execution of crypto currencies, such as Skycoin.

66.     Skycoin devoted significant resources to obtain a Bittrex listing, which had been negotiated through a third party.

67.     Knowing that Skycoin was about to obtain a Bittrex listing, on or about February 25, 2018, Defendant Stephens threatened Smietana that unless Smietana paid Defendants Gevirtz, Eagle, and Stephens, he would approach Bittrex and purposely interfere with Skycoin's third-party relationships to prevent Skycoin from being listed on Bittrex.

68.     Smietana refused to pay the money demanded by Defendant Stephens, and in turn Stephens did, in fact, provide untrue information to Bittrex which ultimately led to the spread of false rumors regarding Skycoin and Skycoin not being listed on the Bittrex Exchange.

69.     Between February 26, 2018, through March 9, 2018, Defendants Stephens, Gevirtz and Byerly stole access to Skycoin's media accounts, including but not limited to, Skycoin's Shopify store, Twitter account, Linkedin account, Slack channel account, and accounts associated with the operation of Skycoin's website. These media accounts were an integral and necessary component of Skycoin's business.

70.     On or about October 18, 2018, Defendants Stephens and Gevirtz demanded over $150,000.00 for return of Skycoin's stolen computer-based assets and media accounts.

71.     On or about May 24, 2018, Binace announced that it would list Skycoin on its exchange. Binance holds itself out as the "world's largest crypto exchange" and is a trading

platform where customers can buy and sell cryptocurrencies. It is highly desirable for cryptocurrencies to be listed on the Binance exchange.

72.     On or about June 12, 2018, when Smietana refused to succumb to Defendant Stephens' extortion demands, Defendants Stephens, Gevirtz, and Eagle conspired with Yan Xiandong, Li Min, Sam Sing Fond and Sun Fei (hereinafter collectively referred to as the "Assailants") in a plot to kidnap Smietana and his girlfriend, and steal $30,000,000.00 that Stephens claimed he was due from Skycoin.

73.     In furtherance of the conspiracy, the Assailants invaded Smietana's home where they violently beat and tortured Smietana and his pregnant girlfriend for approximately six (6) hours in order to gain access to Smietana's computer systems, Skycoin's source code, Skycoin intellectual property, company accounts for operation of business, and cryptocurrency wallets.

74.     Under threats of further violence and death, Smietana provided the passwords to his computer. The Assailants stole 18.88 Bitcoin with a market value of $139,160.33 and 6,466 Skycoin with a market value of $81,018.98, totalling $220,179.31.

75.     During the siege and home invasion, the Assailants called Defendant Stephens and complained that they did not find the thousands of Bitcoin promised to them.

**DEFENDANTS' THEFT OF ACCOUNTS**

76.     Prior to Defendant Stephens' separation from Skycoin, upon notice of his departure, the company made a list of all accounts to which Stephens had authorized access and thereinafter terminated his access to those accounts.

77.     Skycoin staff contacted Defendant Stephens requesting that he return all company assets and company accounts, and to provide accounting statements of expenditures so that Plaintiffs could calculate how much unspent money was due to the company.

78.     Symbolic Analytics staff and members of Skycoin contacted Defendant Stephens requesting that he return all company assets and company accounts, and to provide accounting statements of expenditures so that Plaintiffs could calculate how much unspent money was due to the company.

79.     Defendant Stephens acknowledged that there were unspent funds due back to Plaintiffs, however, instead of returning the money due, Defendant Stephens hacked into the various company accounts and began to engage in a series of extortion and fraudulent acts against Skycoin.

80.     Defendants Stephens, Gevirtz, and Byerly changed the passwords to some of the company accounts, locked Skycoin and Symbolic Analytics out of them, and then attempted to extort the Company for an additional $150,000.00.  In addition, Defendants Stephens and Gevirtz refused to return the unspent money that was prepaid and allocated for marketing services.  The amount due back to the Company was in excess of $800,000.00.

81.     Plaintiffs incurred considerable expense to regain access to the stolen accounts and to migrate the content to the reacquired accounts. Those accounts included, but were not limited to, the Medium Account, Shopify, Twitter, Skycoin Telegram, Skycoin Rewards, Facebook, and Linkedin.

## DEFENDANTS' UNAUTHORIZED EXPENSES

82.     Defendants Stephens, Gevirtz, and Byerly engaged in various schemes to defraud Skycoin and attempted to invoice unapproved, non-business related costs including a Las Vegas prostitute orgy, unsubstantiated ATM withdrawals, personal entertainment costs and what is believed to be money for the purchase of drugs. These expenses were neither approved by Skycoin nor related to any legitimate business activities.

83.     For example, Defendant Stephens sent invoices to Skycoin totaling $50,000.00 for cash payments for two days in Las Vegas. Despite several requests, Defendants refused to produce ATM receipts for the $50,000.00 expense, could not explain how the cash was used, could not show that the expenses were business related, could not justify the amount spent, and could not produce receipts for any "cash payments."

84.     Defendants Stephens, Gevirtz and Byerly billed Symbolic Analytics for subcontractors without seeking prior authorization from Plaintiffs for such payments.

85.     Upon information and belief, Defendants Stephens, Gevirtz, and Byerly engaged in a scheme to defraud Plaintiffs by invoicing full time rates for subcontractors employed part time and even invoicing Company for nonexistent persons.

86.     Defendants Stephens, Gevirtz, and Byerly billed for subcontractors work that not only both pre-dated and post-dated the Marketing Program, but which also included full time rates for part-time work and also included invoicing from nonexistent subcontractors.

87.     Defendants Stephens, Gevirtz, and Byerly billed for invalid date periods, such as submitting invoices for billing periods prior to the Marketing Program and work performed for billing periods after the termination of their relationship with Skycoin.

88.     Defendants Stephens, Gevirtz, and Byerly attempted to bill for costs which had not been submitted to the Company for preapproval and made misrepresentations to Skycoin staff, including Skycoin's Head of Events, who was responsible for event budgets. Stephens made false misrepresentations claiming that these expenses had received approval, and that the Company had been notified of the expenses..

**89.** Defendants Stephens, Gevirtz, and Byerly attempted to bill the company for unapproved "events" on non-existent dates. Additionally there were several other strong indicators that many or all of the claimed expenses were fraudulent or manufactured.

## JOSHUA OGLE

90. Joshua Ogle ("Ogle") is the owner of Far Ahead Marketing ("FAM") and co-founder of the original agency who orally agreed with Skycoin on or about May 19, 2019, to provide certain advertising services including Facebook Advertisements.

91. In 2019, Defendants Stephens, Gevirtz, Kunstman, and Ogle engaged in a conspiracy to defraud Skycoin. They engaged a Wikipedia moderator to delete Skycoin's Wikipedia page in a rigged "vote for deletion" where all users voting against deletion were banned.

92. Upon information and belief, Defendants then messaged Smietana on Telegram and offered a "Wikipedia Protection Package" costing $180,000.00 a year, to "protect" Skycoin's Wikipedia page against deletion. Plaintiff Smietana refused payment. As a result, Skycoin's Wikipedia page was, infact, deleted.

93. Upon information and belief, after the deletion of Skycoin's Wikipedia page, Ogle, an associate of Defendants Stephens and Gevirtz, approached Skycoin and Smietana and offered marketing services to restore Skycoin's Wikipedia page, if Skycoin retained Ogle's marketing firm.

94. Skycoin and Symbolic Analytics retained Defendant Ogle's marketing firm, without knowing at this time, his relationship and cooperation with Defendants Stephens, Gevirtz, and Kunstman. In fact, Defendant Ogle denied at this time having any contact or relationship with Defendants Gevirtz and Kunstman. However, the Company later discovered Defendant Stephens

had previously stated, in writing, that Defendant Gevirtz was "best friends" with Defendant Ogle and that Ogle had made misrepresentations about his personal relationships and conflicts of interest.

95.     Defendant Ogle knew that Plaintiffs would not have made payments to his marketing firm had he not made misrepresentations and had his conflicts of interests been previously disclosed. Defendant Ogle purposely made these misrepresentations in order to obtain payments that would not have otherwise been made.

96.     Upon information and belief, the Company later received communications showing that Ogle was cooperating and assisting Defendants Kunstman and Stephens in an extortion scheme against Skycoin. Defendant Ogle approached the Company and claimed that he was a "neutral third party" and that he could negotiate and "resolve" the extortion situation. However, the communications indicate that Defendant Ogle was acting in collusion with Defendants Kunstman and Stephens to convince the Company to pay the extortion demands, while making misrepresentations to the Company concerning his conflict of interests and further lied, concealed, and denied his personal relationships with the involved persons.

97.     Skycoin paid Defendant FAM $15,000.00 in Bitcoin for such advertising services, however, the work was never performed.

98.     Defendant Ogle also made other misrepresentations about the nature of the services provided to defraud Skycoin and Symbolic Analytics. For instance, Defendant Ogle invoiced for and provided "reports" showing a "Youtube advertising campaign", however there was no indication or evidence that the advertisements were actually ever performed.

99. On or about June 9, 2019, Skycoin paid Defendant FAM an additional $16,000.00 in Bitcoin for marketing placements in United States mainstream magazines and other online publications.

100. Also, Defendant Ogle coordinated a "paid placements" arrangement, where he would recruit journalists and arrange payments to these journalists for the publication of articles for the promotion of Skycoin. As part of Defendant FAM's marketing plan for Skycoin, Defendant Ogle introduced Smietana to journalist Defendant Morgen Peck ("Peck") in New York in June of 2019.

101. On or about July 9, 2019, Skycoin paid FAM an additional $10,000.00 in Bitcoin for Facebook advertising. This Facebook advertising was never placed.

102. On or about July 10, 2019, Skycoin paid Defendant FAM $5,000.00 in Bitcoin for two press releases. Defendant Ogle made numerous misrepresentations about the press releases and claimed that the press releases were through his own personal contacts. The Company paid for a "premium" package meant to provide additional circulation in higher tier media outlets. However, Defendant Ogle performed the press releases using a commercial distribution service, instead of the type of press release distribution that was agreed upon and paid for. Upon information and belief, Defendant Ogle's press release misrepresentation is a scheme to defraud the Company by substituting the press release service purchased for a sub-standard service to what was agreed to and paid for.

103. On or about September 18, 2019, Skycoin paid Defendant FAM $41,000.00 in Bitcoin to review its marketing activities in China and to provide guidance on appropriate advertising strategies. The guidance was to include a report with advice and recommendations regarding the marketing and promotion of Skycoin.

104.    To provide such advice, Defendant Ogle flew to China, reviewed Skycoin's operations, however, no written report was provided. Defendant Ogle then demanded more money and claimed that he would need to fly back to Shanghai and that several tens of thousands of dollars were needed to provide the marketing strategy report.

105.    In October of 2019, Skycoin paid Defendant FAM $40,000.00 by Bitcoin for bus stop advertising.  Bus stop advertisements are ads that are placed on benches and the areas around the benches people use while waiting for public transportation. These bus stop advertisements were in fact never placed.

## BINANCE DELISTING

106.    In and around June of 2020, because Smietana refused to capitulate to the extortion demands, Defendant Stephens, in conjunction with Defendant Kunstman and others embarked upon a scheme and plan to delist Skycoin from Binance and effectively destroy Skycoin's reputation and depress Skycoin Tokens' market value.

107.    In furtherance of this plan and scheme, Defendant Stephens solicited other individuals to make false complaints against Skycoin in order to have Binance delist Skycoin from the exchange.  The false complaints they directed others to make to Binance to achieve the delisting are as follows:

   A.  That Skycoin sells Skycoin Tokens customers outside of the Binance exchange but after receiving the funds, never sends those customers the Skycoin Tokens for which they paid;

   B.  That individuals from Skycoin would privately meet with customers and accept payment for Skycoin Tokens at 15% below market value;

   C.  After customers consummated such side transactions, they would immediately "dump" the Skycoin Tokens on the market;

D. That Smietana would request that customers privately pay him $1,000,000.00 in Bitcoin or cash for discounted Skycoin Tokens that they could then "dump" on the market immediately and achieve a $150,000.00 profit; and

E. That Smietana and Skycoin launders money through customers by promising them an immediate 15%-20% profit through the unauthorized purchase of Skycoin Tokens.

108. Upon evidence and belief, Defendant Cuthriell and other persons were hired to harass Skycoin and interfere with Skycoin's relationships with exchanges and partners corporations, made public statements in Telegram channels bragging that they had paid journalists to publish articles to slander the company, and even publicly discussed the type and content of false reports that needed to be made against Skycoin in order to achieve a delisting from Binance.

109. As part of his plan and scheme to have Skycoin delisted from Binance, Defendants Stephens, Kunstman, and Cuthriell also orchestrated having several individuals send repeated complaints to Binance that included allegations of drug use and criminal charges against Smietana and other baseless allegations.

110. As further evidence of the conspiracy, Defendant Cuthriell publicly congratulated all persons involved in the Binance delisting of Skycoin with the exclamation of "Nice work team" and "PARTY TIME."

**COUNT I**
**Violations Of The Racketeer InfluencedAnd Corrupt Organizations Act (Rico)**
**18 U.S.C. § 1961 Against Bradford Stephens, Harrison Gevirtz, Aaron Kunstman, and Joel Wayne Cuthriell**

111. Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 112 of this Count I as if fully set forth herein.

112.     Pursuant to 18 U.S.C. §1961(3), each of the named Defendants in this count are "persons" as each are an "individual or entity capable of holding a legal or beneficial interest in property."

113.     Pursuant to 18 U.S.C. §1961(4), Defendants establish an "enterprise" as they are an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

114.     Pursuant to 18 U.S.C. §1962(d), "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [18 U.S.C. §1962]."

115.     As detailed above (¶¶ 38-114), these Defendants have conspired to commit a years-long and ongoing pattern of racketeering through their association with other parties organized under the common purpose of extortion and racketeering activities against Plaintiffs.

116.     Defendants' association has been ongoing for years for the purpose of obtaining money from and trying to destroy Plaintiffs S.A. and Skycoin. Accordingly, this group of Defendants and non-Defendants constitutes an association-in-fact enterprise (hereinafter "the Enterprise") as defined 18 U.S.C. §1961(4).

117.     The Enterprise engaged in a four-year campaign of harassment, fraud, extortion, and violent threats against Plaintiffs Smietana, S.A., and Skycoin.

118.     The Enterprise, including Defendants Kunstman, Stephens, and associates approached Skycoin's competitors and Smietana's personal enemies and received money to fund a full-time harassment and extortion operation (see ¶¶38-114).

119.     The Enterprise's operations went on for nearly a four-year period, constituting of dozens of varied and extensive scams, extortion rackets, protection rackets, and various types of fraud targeted against  Plaintiffs SA, Skycoin and Smietana.

120.     Upon information and belief, this operation included up to eight persons who were full-time staff, up to 50 persons recruited on a "per task" basis for specific operations, and dedicated IT managers for operation of "bot nets" of hundreds of computer accounts used against Skycoin and Smietana in extortion threats. (See Appendix B)

121.     The Enterprise's operation also included a campaign of hacking Skycoin's corporate accounts, engaging in protection rackets, as well as bribing journalists to write false statements against Skycoin and then blackmailing and extorting the Company to stop these acts of harassment.

122.     This enterprise was operated as a full-time "marketing operation" as a method of generating income and paying a salary for its members.

123.     All income derived originated from extortion, marketing manipulation, or the solicitation of competitors of Skycoin and/or personal enemies of Smietana.

124.     The persons so engaged in this enterprise openly and publicly admitted that their objective was to "Destroy Skycoin" and to drive the price of Skycoin Token to zero. (See Appendix B)

125.     The Enterprise even engaged in, and induced, violent criminal acts against Smietana's person and violent theft of Plaintiff S.A.'s property, in retaliation for failure to pay Defendants' and the Enterprise's extortion demands.

126.     Defendants and the Enterprise knew they were engaged in racketeering acts. Defendant Kunstman in private messages explicitly told persons "I am extorting Smietana for $1,000,000" and offered "a cut" to anyone who participated in the enterprise. (See Appendix B and Appendix G)

127.    These acts of attempted, or successful, racketeering were multiple, consistently performed by the same persons, and occurred continuously for nearly four years, and are still on-going.

128.    Pursuant to 18 U.S.C. §1962(b), it shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

A. The Enterprise affects interstate commerce since its members are located in different states and nations and work together to achieve a common purpose.

B. Defendants are responsible for sending significant sums of money through wire transfers across state lines.

129.    The frauds detailed above (¶¶38-114) also constitute violations of the Wire Fraud statute, pursuant to 18 U.S.C. §1343. These violations formed various schemes to defraud Plaintiffs of money. Specifically,

A. The Defendants and the Enterprise intentionally devised a plan to defraud Plaintiffs out of money through the Marketing Program, in direct violation of the FTC Order;

B. The Defendants and the Enterprise implemented the fake Marketing Program and misrepresented their status with the FTC Order purposely concealed Defendants' relationships with each other, with the intent to defraud Plaintiffs;

C. It was reasonably foreseeable for Defendants and the Enterprise to use interstate wire communication, since the parties were located in different states and areas

of the world, such as Illinois, Wisconsin, Nevada, California, Singapore, and China; and

D. The interstate wire communications were used, as evidenced by numerous text, internet, social media, and email messages.

130.   The extortion schemes also constitute violations of 18 U.S.C. §1951, the Hobbs Act, which prohibits the obtaining of property through the use of fear, force, or violence.

A. Defendants violated the Hobbs Act when inducing violent criminal acts, such as assault against Smietana to obtain money for their extortion demands.

131.   Defendants and the Enterprise also violated 18 U.S.C. §1832 for theft of trade secrets.

A. Through their acts of violence and extortion demands, Defendants stole trade secrets from Plaintiffs including, but not limited to, computer software, source codes for Skycoin, and various hardware designs.

132.   Taken together, these "predicate acts" described within this Count I constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

A. Specifically, this is an "open pattern", as it is the regular way the Defendants and the Enterprise do business and will not stop without judicial intervention.

133.   18 U.S.C §1962(d) states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection (c) of this section." As detailed above, the Defendants have agreed to the commission of the schemes and have executed the schemes by virtue of an agreement to conduct an ongoing campaign against S.A. Therefore, the Defendants have violated 18 U.S.C. §1962(d) by agreeing to violate 18 U.S.C. §1962(c), by participating in the affairs of the association-in-fact enterprise through a pattern of racketeering activity.

134.     Defendants are jointly and severally liable for damages.

135.     This pattern of racketeering has damaged S.A. in excess of $75,000.

136.     These damages were directly and proximately caused by the Defendants' pattern of racketeering against SA.

WHEREFORE, Plaintiff, SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through its attorneys, The Law Office of Michael C. Goode, resepctully pray that this Honorable Court enter a judgment against Defendants Bradford Stephens, Harrison Gevirtz, Aaron Kunstman, and Joel Wayne Cuthriell, and each of them, for three times its damages plus prejudgment interest pursuant to 18 U.S.C. §1964(c), a permanent injunction against the Defendants restraining them from further racketeering activity against S.A. or its officers or employees pursuant to 18 U.S.C. §1964(a), costs, attorneys' fees, and for such other and further relief as this Court may deem just and fair on the premises. In addition, S.A. requests a jury trial.

## COUNT II
### Fraud Against Bradford Stephens, Harrison Gevirtz F/K/A "Harro," and Catherine Byerly

137.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 138 of this Count II as if fully set forth herein.

138.     Defendants Stephens and Gevirtz approached Plaintiffs representing themselves as a legitimate advertising and marketing firm, with Defendants Stephens, Gevirtz, and Eagle Web Assets (EWA) as "business partners" involved in every aspect of the "business".

139.     Defendants would later learn that these persons came from a company "EWA" which had a history of litigation and that these persons were under an FTC Order for fraudulent marketing practices.

25

140. Defendants Stephens, Gevirtz, and Byerly represented to Plaintiff Smietana that they would provide advertising and marketing services, including web design, online advertising, conference events, and display advertising.

141. Defendants Stephens and Gevirtz represented to Plaintiff Smietana that they would provide advertising, web design, and marketing services for Plaintiffs in return for payment.

142. In reality, Defendants Stephens and Gevirtz had no intention of providing any advertising, web design, or marketing of any kind for Plaintiffs.

143. Defendants Stephens, Gevirtz, and Byerly, in fact, did not provide any advertising or marketing services for Plaintiffs.

144. Defendants Stephens, Gevirtz, and Byerly never provided any web design services on behalf of Plaintiffs.

145. In reliance upon the representations of Defendants Stephens, Gevirtz, and Byerly, Plaintiffs paid Defendants Stephens, Gevirtz, and Byerly approximately $800,000.00 for their services and the costs of advertising and marketing.

146. When asked, Defendants represented to Plaintiff Smietana that they had no prior lawsuits that had been filed against them.

147. These representations were knowingly false when made.

148. In fact Defendants Stephens' business partners, Defendants Gevirtz and Eagle had an extensive history of litigation and had been named in multiple lawsuits and were subject to an FTC injunction for fraudulent marketing practices.

149. Following the payment of the initial $800,000.00, Defendants Stephens, Gevirtz, and Byerly requested additional money including an additional $60,000.00.

150. Defendants Stephens, Gevirtz, and Byerly made these representations to Plaintiff Smietana and other Skycoin staff with the intent to induce payments and defraud Plaintiffs.

151. These statements made by Defendants Stephens, Gevirtz, and Byerly were false when made.

152. Defendants created scenarios and orchestrated fraudulent crises, making numerous misrepresentations, solely for the purpose of soliciting more money from Plaintiffs.

153. Defendants Stephens, Gevirtz, and Byerly made the following misrepresentations and/or omissions upon which Plaintiffs justifiably relied to their detriment:

A. Lied about, concealed and denied history of litigation against Defendants' associates, business partners, and former corporations;

B. Failed to inform Plaintiffs of the FTC Order and government sanctions against their former company, even when explicitly asked about any history of litigation prior to payment and contract negotiations;

C. Falsely represented that an unknown third party was targeting Skycoin by linking pornographic blogs and other harmful spam content to Skycoin's website;

D. Falsely agreed to seek written pre-approval from the Company for incurred expenses;

E. Falsely represented that they would provide marketing and advertisement services to Plaintiffs;

F. Falsely representing that they would provide web design services to Plaintiffs; and

G. Falsely represented the expenses and costs of said marketing and advertising services.

(See also *Facts Common to All Counts*)

154.   Plaintiffs relied upon the representations of Defendants Stephens, Gevirtz, and Byerly and paid the requested amounts to Defendants.

155.   As a direct and proximate result of Defendants Stephens, Gevirtz, and Byerly's improper actions, Plaintiffs have sustained substantial economic damage through loss of business, loss of revenue, loss of contracts, loss of market visibility, and damage to their reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants Stephens, Gevirtz, and Byerly, and each of them, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

### COUNT III
### Fraud Against Joshua Ogle

156.   Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 157 of this Count III as if fully set forth herein.

157.   Defendant Joshua Ogle ("Ogle") is the owner of Far Ahead Marketing ("FAM") who contracted with Skycoin on or about May 19, 2019, to provide certain advertising services including Facebook Advertisements.

158.   Ogle, individually and as agent, servant, or employee of FAM, represented to Plaintiffs that he would provide advertising services, including Facebook Advertisements, marketing placements in United States mainstream magazines and other online publications, press

releases, bus stop advertisements, strategic marketing advice, and a "premium" press release with a circulation in Yahoo Finance, Barons, and other top tier publications

159. These statements were false when made and Defendant Ogle knew them to be false when made.

160. Defendant Ogle purposely misrepresented the quality of services provided by his marketing company and defrauded Plaintiffs by substituting his advertised services with a commercial release service, valued at approximately $400, and kept the remainder of the money paid by Plaintiffs.

161. Skycoin paid FAM $15,000.00 in Bitcoin for such advertising services, however, the work was never performed.

162. On or about June 9, 2019, Skycoin paid FAM $16,000.00 in Bitcoin for marketing placements in United States mainstream magazines and other online publications for the promotion of Skycoin's technology. The articles were never published.

163. As part of FAM's marketing plan for Skycoin, Defendant Ogle introduced Smietana to journalist Morgen Peck ("Peck") in New York in June of 2019. In a meeting with Peck, Ogle, and Smietana, Defendant Peck confirmed that she would be handling the paid placements for Defendants FAM and Ogle.

164. On or about July 9, 2019, Skycoin paid Defendant FAM an additional $10,000.00 in Bitcoin for Facebook advertising. This Facebook advertising was never placed.

165. On or about July 10, 2019, Skycoin paid Defendant FAM $5,000.00 in Bitcoin for two press releases. The press releases never occurred.

166.    On or about September 18, 2019, Skycoin paid Defendant FAM $41,000.00 by Bitcoin to review its marketing activities in China and to provide guidance on appropriate advertising strategies.

167.    To provide such advice, Defendant Ogle flew to China and reviewed Skycoin's operations. However, no written recommendations were ever provided. Instead, Defendants Ogle and FAM's only advice was to turn over all of Skycoin's marketing exclusively to Defendant FAM.

168.    On or about September 18, 2019, Skycoin paid Defendant FAM $12,000.00 by wire transfer to create and distribute six (6) press releases.

169.    Upon failing to provide the marketing services promised, Plaintiffs made multiple requests for refunds for the services that were not provided. In response to the refund requests, Defendant Ogle claimed that he could not provide a refund but that he would "roll the money into the imminent bus stop and New York subway advertising campaign."

170.    In October of 2019, Skycoin paid FAM $40,000.00 by wire transfer for bus stop and subway advertising campaign promised by Defendant Ogle instead of providing Plaintiffs with a refund. These bus stop and subway advertisements were never placed and the money was not refunded to Plaintiffs.

171.    Defendant Joshua Ogle, individually and as agent, servant, or employee of FAM, and Defendant Far Ahead Marketing, individually and by and through its agents, servants, or employees, made the following misrepresentations and/or omissions upon which Plaintiffs justifiably relied to their detriment:

      A. Misrepresented that they would be providing advertising services to Plaintiff;

B. Misrepresenting the need for additional funds to pay for advertisements that were never placed;

C. Misrepresented that they would provide press releases of the type agreed upon and in the method agreed upon;

D. Misrepresented that they would provide Facebook advertising;

E. Misrepresented the cost of the advertisements that they were allegedly placing; and

F. Misrepresented that they would provide bus stop advertisements.

172. Plaintiffs relied upon the representations of Defendant Joshua Ogle, individually and as agent, servant, or employee of FAM, and Defendant Far Ahead Marketing, individually and by and through its agents, servants, or employees, and paid the requested amounts to those Defendants.

173. As a direct and proximate result of Defendant Joshua Ogle's, and Defendant Far Ahead Marketing's improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendant Joshua Ogle, individually and as agent, servant, or employee of FAM, and Defendant Far Ahead Marketing, individually and by and through its agents, servants, or employees, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT IV
## Fraud Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz F/K/A "Harro", Joel Wayne Cuthriell F/K/A "Joel", F/K/A "Caribou"

174.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 175 of this Count IV as if fully set forth herein.

175.     On or about January 8, 2018, Plaintiffs entered into an oral agreement with Defendants Stephens, Gevirtz, Kunstman, and Cuthriell wherein these Defendants agreed to provide marketing services for Plaintiffs.

176.     Following that agreement, Defendants Stephens and Gevirtz defrauded Plaintiffs by failing to provide the contracted services, creating false "threats", and extorting funds from Plaintiffs through coercion.  Once discovered, Plaintiffs attempted to distance themselves from Defendants. However, in retaliation, Defendants Stephens, Kunstman, Gevirtz, and Cuthriell began making false online profiles and applications with false information in order to further defraud Plaintiffs out of approximately $2,000,000.00 worth of Skycoin product.

177.     Plaintiffs offered a reward program ("Reward Program") to entice customers to their business.

178.     In order to obtain a reward, each participant is required to submit an application which conformed to S.A.'s terms and conditions. The terms included the following:

    A. Each customer is only allowed to have one active Skywire Rewards account within a single one month period.

    B. Each customer is allowed  to claim rewards for up to 8 Skywire nodes in a one month period.

    C. Only one instance of the "Skywire Node" software can be run on a single physical computer.

D. Each customer may operate only a single reward program account within a one month period

E. Each computer claiming a reward must be a physically separate and independent computer.

F. It is a violation of the Rewards Program terms and service, for a user to run more than one Skywire node per physical computer.

179. Defendants, Cuthriell and Stephens developed software to run over 300 "nodes" on a single physical computer, to defraud the Reward Program.

180. Relying on the misrepresentations, S.A. provided these persons rewards to which they were not entitled, totaling approximately $2-$4 million (the precise amount of which is unknown as they have continued to submit fraudulent applications continuously and under multiple fake aliases). It is a regular method of the conspirators' business to harass S.A. in this and other ways, and they will not stop without judicial intervention.

181. Plaintiffs relied upon the information provided in those online applications and profiles.

182. Had Plaintiffs known that these profiles and applications were being generated and submitted by Defendants Stephens, Kunstman, Gevirtz, and Cuthriell repeatedly in order to accumulate Skycoin under false pretenses, Plaintiffs would not have made Reward Program payments to Defendants Stephens, Kunstman, Gevirtz, and Cuthriell.

183. Defendants Stephens, Kunstman, Gevirtz, and Cuthriell made these repeated false representations to Plaintiffs through these applications and profiles even though they knew that they were false and made under false pretenses, with an intent to induce Plaintiffs into providing the $2,000,000.00 in digital payments/digital assets/digital currency.

184.    Defendants Stephens, Kunstman, Gevirtz, and Cuthriell have at all relevant times perpetuated and deliberately concealed this fraud from Plaintiffs.

185.    Defendants Stephens, Kunstman, Gevirtz, and Cuthriell have engaged in a scheme to defraud Plaintiffs by consistently attempting to conceal this fraud and continue to submit false applications and profiles to Plaintiffs.

186.    Defendant Eagle conspired with Defendants Stephens, Kunstman, and Gevirtz to extort Plaintiffs out of money by threats of physical harm through the Assailants who invaded Plaintiff Smietana's home and tortured both him and his then pregnant girlfriend for over six hours.

187.    As a direct and proximate result of Defendants Stephens, Kunstman, Gevirtz, and Cuthriell's improper actions and misrepresentations, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

188.    Plaintiffs relied upon the accuracy and truthfulness of the submitted applications and profiles, and, had Plaintiffs been aware that the representations of Defendants Stephens, Kunstman, Gevirtz, and Cuthriell were false, Plaintiffs would not have acted as they did.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants STEPHENS, KUNSTMAN, GEVIRTZ, AND CUTHRIELL, and each of them, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

**COUNT V**

34

**Civil Conspiracy Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz, F/K/A "Harro", Ryan Eagle, Far Ahead Marketing, Llc., Joel Wayne Cuthriell F/K/A "Joel", Morgen Peck, Catherine Byerly, and Joshua Ogle and _UNKNOWN INDIVIDUALS AND COMPANIES_**

189. Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 190 of this Count V as if fully set forth herein.

190. Defendants agreed and conspired with one another to defraud Plaintiffs, tortiously interfere with their business relationships, commit various acts of wire fraud, computer fraud, manipulate the cryptocurrency market, and convert Plaintiffs' property surreptitiously.

191. Defendants' acts in furtherance of the conspiracy included, but were not limited to:

    A. Devising and implementing the Marketing Program to defraud Plaintiffs of money;

    B. Hacking and linking pornographic blogs and other harmful spam content to Skycoin's website to decrease Skycoin's website's ranking precipitously in search engines and irrevocably destroy Skycoin's image, reputation, and internet presence;

    C. Threatening Plaintiffs with physical harm to extort them out of money;

    D. Invading Plaintiff Smietana's home and torturing Plaintiff Smietana and his pregnant girlfriend for approximately six (6) hours in order to gain access to Smietana's computer systems, Skycoin's source code, Skycoin intellectual property, company accounts for operation of business, and cryptocurrency wallets;

E. Creating and employing a network of journalists to publish fraudulent articles to destroy Skycoin's image and reputation in order to drive down the price of Skycoins; and

    1. Tristan Greene, a journalist and reporter for *NextWeb* was employed by Defendant Stephens, and knowingly published false articles regarding the legitimacy of Skycoin and Skycoin's technology;

        i. Greene was within Defendant Stephens' network and at all times knew Defendant Stephens was not the COO of Skycoin, yet published that he was, and continued to publish false information even after Plaintiff Smietana's continuous attempts to correct the false claims.

    2. Employing Defendant Morgen Peck to knowingly write a false and defamatory article published in The New Yorker alleging Skycoin as a fraud and a scam; and

    3. Publishing an article in *Cointelegraph* by Simon Chandler, claiming that Plaintiffs' attackers were "emboldened" to physically harm Plaintiff Smietana due to Skycoin's "shady dealings."

F. Hacking Skycoin's Reward Program to defraud Plaintiffs out of millions of dollars.

192. Defendants worked in concert with one another to accomplish this fraud as evidenced by their various communications and concerted acts against Plaintiffs.

193. Defendants intended to defraud Plaintiffs out of their money, their product, and to tortiously interfere with their business relationships.

194.    As a direct and proximate result of Defendants' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz, F/K/A "Harro", Ryan Eagle,  Far Ahead Marketing, Llc., Joel Wayne Cuthriell F/K/A "Joel", Morgen Peck, Catherine Byerly, and Joshua Ogle and UNKNOWN INDIVIDUALS AND COMPANIES, and each of them, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

### COUNT VI
### Tortious Interference
### Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", Joshua Ogle, Far Ahead Marketing, Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou", Catherine Byerly, Ryan Eagle, and *UNKNOWN INDIVIDUALS AND COMPANIES*

195.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 196 of this Count VI as if fully set forth herein.

196.    Plaintiffs  developed business relationships and contracts with various vendors and customers since its launch in 2013.

197.    Skycoin sells non-fungible electronic products that fluctuate in value based upon the market rates on specific internet exchanges.

198.     For Skycoin to do business, it must participate in these internet exchange markets, such as, but not limited to, Bittrex, Binance, Kraken, Poloniex and Bifinix, in order to sell its goods.

199.     Defendants Stephens, Kunstman, Gevirtz, Eagle,  FAM, Cuthriell, Byerly, Ogle, and *UNKNOWN INDIVIDUALS AND COMPANIES,* orchestrated various schemes to undermine the reputation of Plaintiffs and cause these internet exchange markets, specifically, Bittrex and Binance, to remove Plaintiffs' products from their exchanges (known as "Delisting").

200.     Defendants were fully aware of Plaintiffs' position within these  internet exchange markets.

201.     Defendants were fully aware that Plaintiffs' Skycoin Token must be sold on these internet exchange markets.

202.     Defendants were fully aware that Plaintiffs had agreements and/or expected agreements with these internet exchange markets.

203.     Defendants, nonetheless, acted in concert to cause these internet exchange markets to remove Plaintiffs' Skycoin Token from those markets by harassing Skycoin and interfering with Skycoin's relationships with exchanges and partners corporations, making public statements bragging that they had paid journalists to publish articles to slander the company, publicly discussing the type and content of false reports that needed to be made against Skycoin in order to achieve a delisting from Binance, and orchestrating having several individuals send repeated complaints to Binance that included allegations of drug use and criminal charges against Smietana and other baseless allegations.

204. At all relevant times herein, Defendants intended to cause harm to Plaintiffs' reputation and finances in order to interfere with their relationships with these internet exchange markets, along with their customers and vendors.

205. As a direct and proximate result of Defendants' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", Joshua Ogle, Far Ahead Marketing, Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou", Catherine Byerly, Ryan Eagle, and UNKNOWN INDIVIDUALS AND COMPANIES, and each of them, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT VII
### Conversion Against Steven Leonard

206. Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 207 of this Count VII as if fully set forth herein.

207. Defendant Leonard became aware that Plaintiff S.A. owned in excess of 180 Bitcoins.

208. Defendant Leonard converted over 180 Bitcoin owned by S.A. and stole the electronic currency without permission or authority.

209.  Upon evidence and belief, Defendant Leonard was recruited by Defendants Kunstman, Stephens, and Cuthriell to steal Skycoin's website, www.skycoin.net,  as part of a conspiracy by to recruit disgruntled Skycoin employees in an attempt to cause damage to Skycoin and to induce extortion payments. (See Appendix F)

210.  Defendant Leonard refused to return the website to Skycoin unless Bitcoins were paid to Defendants Kunstman and Leonard. The theft of the website caused Plaintiffs' $500,000.00 in damages by forcing Plaintiffs to spend emergency funds.

211.  Defendant Leonard was also one of numerous employees recruited to steal Skycoin's intellectual property and deliver the findings to Defendants Kunstman, Stephens, and Cuthriell.

212.  The overtaking of Skycoin's website and theft of the company's intellectual property were both part of a larger scheme to change Skycoin into a new company, "Skycoin Cash", and claim that all of Skycoin's employees had quit their positions with the company to join Skycoin Cash.

213.  Since its conversion, Defendant Leonard has not returned the amount of Bitcoin stolen from Plaintiff S.A., despite repeated requests for him to do so.

214.  As a direct and proximate result of Defendant Leonard's improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS for

an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

**COUNT VIII**
**Violations Of The Defend Trade Secrets Act Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz, F/K/A "Harro", Ryan Eagle, Far Ahead Marketing, Llc., Joel Wayne Cuthriell F/K/A "Joel", Catherine Byerly, and Joshua Ogle and *UNKNOWN INDIVIDUALS AND COMPANIES***

215.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 216 of this Count VIII as if fully set forth herein.

216.    As part of Plaintiffs' business, Plaintiffs developed hardware and software that worked in conjunction with each other to provide customers with the ability to use and "mine" Skycoins, while also allowing customers to make initial coin offerings.

217.    The hardware designs were proprietary and only known to Skycoin officers.

218.    The software and corresponding source codes allowed Plaintiffs network and programs to generate, sell, and distribute their digital assetsto customers.

219.    Defendants violated 18 U.S. Code § 1832 by:

A.  Breaking into Plaintiffs' computers without authorization, stealing the source codes for their own use and the hardware designs in the hopes of taking over Plaintiffs' business.

220.    These source codes and hardware designs are trade secrets unique to Skycoin and essential to the development and functionality of Skycoins.

221.    As set forth above, Defendants have misappropriated and used Plaintiffs' Trade Secret source code and proprietary software architecture, including without limitation confidential information relating to Plaintiffs' proprietary architecture design, proprietary software, and internal software methodology ("Plaintiffs' Trade Secrets").

222. Plaintiffs' Trade Secrets were sufficiently secret and maintained so that only Plaintiffs' principal, Brandon Smietana, was privy to each and every trade secret and their collective uses.

223. Plaintiffs' Trade Secrets are sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from their disclosure or use.

224. Public knowledge of the trade secret source codes and hardware affect the marketability of Skycoin tokens.

225. Plaintiffs have at all relevant times taken steps that are reasonable under the circumstances to maintain the secrecy and confidentiality of their Trade Secrets.

226. Defendants attained these trade secrets of Plaintiffs by breaching Plaintiffs' software and source code in order to use and disseminate Plaintiffs' Trade Secrets.

227. Defendants were fully aware that the information comprising Plaintiffs' Trade Secrets were secret, confidential, and maintained in such a way as to prevent disclosure to third parties, and specifically competitors.

228. Defendants violated the Defend Trade Secrets Act by and through the following acts and omissions:

    A.  Utilizing Plaintiffs' Trade Secrets in Defendants' products, equipment, and within its industry;

    B.  Misappropriating Plaintiffs' proprietary hardware designs;

    C.  Misappropriating Plaintiffs' source code;

    D.  Divulging Plaintiffs' Trade Secrets to third parties; and

    E.  Using improper means to access and misappropriate Plaintiffs' source code.

229.     As a direct and proximate result of Defendants' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz, F/K/A "Harro", Ryan Eagle, Far Ahead Marketing, Llc., Joel Wayne Cuthriell F/K/A "Joel", Catherine Byerly, and Joshua Ogle and UNKNOWN INDIVIDUALS AND COMPANIES, and each of them, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

**COUNT IX**
**Unjust Enrichment Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz, F/K/A "Harro", Ryan Eagle, Far Ahead Marketing, Llc., Joel Wayne Cuthriell F/K/A "Joel", Catherine Byerly, Steven Leonard, and Joshua Ogle and *UNKNOWN INDIVIDUALS AND COMPANIES***

230.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 231 of this Count IX as if fully set forth herein.

231.     Defendants were provided approximately $860,000.00 in funds to provide marketing, advertising, and web design services to Plaintiffs.

232.     These funds and goods were not earned and Plaintiffs received no equivalent value for them in return.

233. It would be unconscionable and against fundamental principles of justice, equity and good conscience for Defendants to retain the benefit from those funds, which were paid by Plaintiffs without receiving any benefit in return.

234. Defendants also obtained approximately $2,000,000.00 in Skycoin Tokens through false reward applications.

235. These funds and goods were not earned, were stolen by fraudulent means, and Plaintiffs received no equivalent value for them in return.

236. It would be unconscionable and against fundamental principles of justice, equity and good conscience for Defendants to be unjustly enriched by retaining the benefit from the stolen funds, without Plaintiffs receiving any benefit in return.

237. As a direct and proximate result of Defendants' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz, F/K/A "Harro", Ryan Eagle, Far Ahead Marketing, Llc., Joel Wayne Cuthriell F/K/A "Joel", Catherine Byerly, Steven Leonard, and Joshua Ogle and UNKNOWN INDIVIDUALS AND COMPANIES, and each of them, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT X
## Defamation Against Morgen Peck

238.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 239 of this Count X as if fully set forth herein.

239.     Defendant The New Yorker is an American weekly magazine publication.

240.     At all times relevant herein, Defendant Peck was an agent of The New Yorker.

241.     At all times relevant herein, Defendant Peck was an apparent agent of The New Yorker.

242.     At all times relevant herein, Defendant Peck was acting within the course and scope of her authority as an agent of The New Yorker.

243.     At all times relevant herein, Defendant Peck was acting within the course and scope of her authority as an apparent agent of The New Yorker.

244.     On Aug 18, 2021 an article submitted by Morgen Peck was published in The New Yorker. (See Appendix A)

245.     The New Yorker has 6 million monthly readers, 16 million digital users, and 16.8 million social media followers.

246.     Defendant Peck published blatant lies and misrepresentations about Plaintiffs in her article including, but not limited to the following:

   A.  Misrepresenting Smietana's relationship with Defendant Stephens and Defendant Stephens' involvement with Skycoin and Skycoin's marketing campaign; (See Appendix A)

   B.  Statements alluding to Smietana and Skycoin as a fraud and a scammer, such as:

1. "In a way, it makes you into a fraud";

2. "Is it a scam? I'm 99 percent sure of it"; and

3. Suggesting that Skycoin was part of a "pump and dump" scheme. (See Appendix A)

C. Falsely stating Stephens has recordings of Smietana stating, "We want to feminize the peasant population to make them more docile ... [i]t's so they don't revolt." (See Appendix A)

1. Smietana asked Defendant Peck on multiple occasions regarding the existence of the alleged recording to verify the contents of her claims for this statement, however Defendant Peck never confirmed that she obtained such a recording, even though it was used as a purported source for factual information in the article.

2. Smietana also denied such statements to Defendant Peck multiple times, each time reiterating that they were fabricated and untrue. Defendant Peck still published the statements.

3. Defendant Peck admitted to Smietana that no one she interviewed would collaborate with the quotes given by Stephens. Therefore, Defendant Peck knew or should have known the published quotes were false.

4. Defendant Peck knew that Defendants Stephens and Kunstman were members of the neo-nazi, alt-right internet forum "/pol/" and that similar antisemitic quotes were circulated there

5. As a result of the publication of the article, a Neo Nazi publication cited to the false statement from Defendant Peck's article quoting Smietana, and thereby causing damage to Plaintiffs' reputation.

6. As a result of the publication of this statement, Smietana was subjected to numerous death threats, harrassment, and various hate crimes. (See Appendix D)

D. Stating falsely that Smietana invited Binance executives to a Skycoin party during a 2018 conference in Las Vegas and instructed Stephens to hire prostitues for the executives; (See Appendix A)

1. In fact, it was confirmed there were no Binance executives at the conferece and the party was a private party of Defendant Stephens, without any affiliations to Skycoin or Plaintiffs. (See Appendix C)

2. Defendant Stephens' job was to set up meetings at conferences. He unilaterally held a private party without instruction to do so. Any approval for holding an event was contingent upon finding people from Binance, who were, in fact, not even in attendance at the conference.

3. This inaccurate depiction of events was designed to destroy the relationship between Binance and Skycoin and was manufactured solely to do damage to Plaintiffs' reputation and business.

4. Defendant Peck knew or should have known the statements were false, because Smietana sent her the messages from Defendant Stephens for the conference.

5.    Defendant Peck interviewed Michael Terpin (the event organizer) and Daken Freebourne (Skycoin's head of events), who explicitly told Defendat Peck that Stephens was a compulsive liar and that his account was fabricated.

6.    Defendant Peck merged stories from three separate conferences into a non-factual and defamatory account, designed to inflict damages to Plaintiffs.

E.   Conclusory and unsupported statements by others;

1.    Stating that "according to several people" (without any further evidence), that Skycoin privately sold to investors at a discounted rate; (See Appendix A)

2.    The article continuously includes unsupported statements supposedly from "employees" of Skycoin, however Peck told Smietana in conversations that she did not have documentation to show who these "employees" were, if and when they worked at Skycoin, or any confirmation of their statements.

3.    Defendant Peck published statements made by people against whom she knew Plaintiff Smietana had an ongoing lawsuit against and therefore knew or should have known these were unreliable sources.

F.   Falsely accusing Smietana of pre-mining "a hundred million coins, which were scheduled for circulation"; (See Appendix A)

48

1. Peck published this statement with full knowledge that Skycoin does not engage in any mining.

2. During fact checking, Peck referenced a website that listed companies with pre-mine scams. ([https://altcoins.com/scamcoins](https://altcoins.com/scamcoins)) (See Appendix J)

   i. The website listed "SYC Skycoin – premined" under a list titled, "List of scamcoins – do not use"

   ii. SYC Skycoin is a completely different company from SKY Skycoin (Plaintiff).

   iii. Peck knew that SYC was not Plaintiffs' company and that SYC was not SKY.

   iv. Therefore, Peck falsely accused and published in her article that Plaintiff Skycoin engaged in a pre-mining scam.

G. Falsely accusing Smietana of directing Skycoin's marketing unit to purposely spread negative rumors to attract attention by stating "In a chat with investors, Smietana said that they sometimes spread negative rumors about Skycoin, in order to attract attention"; (See Appendix A)

   1. Peck does not provide support to confirm where this chat was from, who the "investors" were, or the full context of the conversations.

   2. The quote itself is purposely suggestive and alludes that Skycoin publishes negative rumors for promotion, but does not clarify who "they" are that "spread negative rumors. "

H.     Falsely accusing Smietana of "plotting new distractions";

    1.  In support, Peck quoted Smietana, "Quick, someone photoshop video of me being beheaded by ISIS and see if you can get them to write an article about it."

    2.  The quote was purposely skewed by Peck and taken out of context to defame Smietana and Skycoin.

    3.  The quote is a snippet of a message that clearly signifies a joke, in which the full text reads "The media is retarded. They are still writing articles about the 'insider trading' of cat memes, fake news. Quick, someone photoshop video of me being beheaded by ISIS and see if you can get them to write an article about it. 'Kittycash CEO beheaded by ISIS after SEC investigation.'" (See Appendix I)

I.     Purposely taking direct quotes from chatrooms/messaging conversations and placing them out of context to twist their meaning and damage Plaintiffs;

    1.  Peck wrote, "A few weeks into the sell-off, a voice message from Smietana emerged on Telegram that seemed to imply that the biggest Skycoin investors were coordinating their moves in a secret chat room. Smietana said in the message, of the investors, "Everyone was basically doing the exact opposite of whatever the public was doing." (Smietana acknowledged being in the chat room at one point but claimed that he was barely involved.)" (See Appendix A)

     i.    The quote was purposely misconstrued as it had nothing to do with insider trading channels;

    ii.    It was evident from the chat conversations that any reference to any "secret insider trading" was a joke. (See Appendix I)

   iii.    Peck knew that the "secret chat rooms" were, in fact, public channels, accessible to all people.

2. Defendant Peck quoted Smietana as stating "If you put in a million dollars now, and we have a run just as large as the last one, you're going to be at fifty million dollars."

     i.    This statement was knowing taken out of context, altering its meaning, and presenting Smietana in a false light.

    ii.    Defendant Peck's quote claims that Smietana engaged in price promotion for Skycoin, knowing that Smietana was prohibited from making such statements by company policy and that Smietana could be fired or reprimanded for violation of company policy for making these statements.

   iii.    Defendant Peck knew, or should have known, these out of context statements would expose Plaintiff Smietana to legal liability and damage his reputation and business.

   iv.    Defendant Peck admitted to Smietana that she could find no example of Smietana engaging in price promotion.

3. Defendant Peck quoted Smietana as stating, "many could be corroborated only by people whom he swore existed but who couldn't

talk because they had government security clearance, or were in hiding, or because he didn't know their real names".

    i.   Smietana actually said, "all software developers who work in cryptography have government security clearance, because government contractors are the only clients of the industry."

    ii.   Peck distorted, or even manufactured, statements wholesale for the purpose of defaming Plaintiffs.

J.   Falsely accusing Smietana of having sole control of the "pre-mined" coins and Skycoin's virtual wallets; (SeeAppendix A)

    1.   It is public knowledge that Skycoin is an incorporated corporate entity and not under the sole control of one person.

    2.   Peck had posession of Skycoin's incorporation documents and corporate structure, and therefore knew, or should have known, that her statements were false.

K.   Accusing Smietana of soliciting advice from an online personality who used a Hitler avatar in his profile; (See Appendix A)

    1.   Peck admitted to Smietana during fact checking that she could not find any evidence substantiating her statement that Smietana solicited and made payments to internet users with a Hitler avatar.

    2.   Defendant Peck admitted to Smietana, that only Defendants Stephens and Kuntsman had made these claims, and that no other persons could corroborate these statements.

3. Peck continued to publish the above statement, knowing its defamatory and false nature.

L.   Alleging that Smietana lied about the extent of his medical injuries sustained from the attack on himself and his girlfriend, even after publishing that Smietana's attackers admitted to detaining and injuring Smietana and his girlfriend; (See Appendix A) and

1. Smietana provided Peck with copies of court proceedings and medical records, completely contradicting the false statements she published in the article.

M.   Alleging that Smietana used the attack on himself and his girlfirend to "use his power to freeze Skycoin transactions," (See Appendix A) when Smietana clearly stated in an official announcement to the Company that funds were frozen after making sure all Skycoin staff were safe after the attack and extortion demands. (See Appendix H)

1. Peck knew that Skycoin's lead developer, Defendant Steven Leonard – not Smietana - had initated freezing the stolen funds from the Chinese marketing team and employee accounts after the company detected embezzlement.

2. Peck knew that the funds that were frozen were solely company accounts.

N. Defendant Peck implied that That Smietana had been employed as a software developer by the notorious Washington DC lobbyist, Jack Amabrov, who had several felony convictions, including a plea bargains for SEC violations.

1. Defendant Peck was aware that the allegation were false because the company directly informed her that Smietana had briefly spoken to them in 2018, but that no agreement had been reached.

2. Defendant Peck admitted that the statements were false and apologized to Smietana multiple times for bringing up false claims.

3. Defendant Peck knew or should have known that claiming Smietana had been employed by Jack Amabrov, would cause severe damage to Plaintiffs' business and reputation.

O. Defendant Peck implied that one of Skycoin's mathematical algorithms, "Obelisk", did not actually exist and that Plaintiffs committed fraud.

1. Defendant Peck knew that these statements were false, as she had possession of both the source codes and white paper for the algorithm.

2. Additionally, Skycoin's algorithm papers were published on Skycoin's website and in peer reviewed journal articles. This information was publicly available, and Defendant Peck had access to the public links to these algorithms.

3. Defendant Peck had this information at the time she claimed these algorithms did not exist.

247. Defendant Peck published that "Stephens came up with a plan to strip Smietana of power and transfer management of the company to a foundation." (See Appendix A)

248.     Defendant Peck, knowing that Defendant Stephens' intentions were to take the Company from Smietana, continued to base her article on information provided mainly by Defendant Stephens, completely disregarding his clear bias and motive to disenfranchise Smietana from Skycoin and seize control of the Company.

249.     After publication of the article, a former employee of Defendant Stephens and Kunstman contacted Plaintiffs stating that Peck received money to intentionally produce and publish a defamatory article attacking Plaintiffs and would receive bonus payments for destroying Skycoin's relationship with Binance. (See Appendix C)

250.     The statements made by Defendant Peck in the article were purposely false and defamatory in return for financial gain and personal benefit of Peck.

251.     Defendant Peck acted within the scope of her agency with principal The New Yorker when she submitted and published the article.

252.     As a direct and proximate result of Defendant Peck's libelous publication, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

253.     As a direct and proximate result of the libelous publication in the New Yorker, Smietana suffered serious damage to his reputation, which resulted in numerous death threats, harrassment, and financial harm to his company.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendant MORGEN

PECK for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

**COUNT XI**
**Defamation Against Condé Nast D/B/A The New Yorker And The New Yorker, As An Individual And Agent Of Condé Nast**

254.    Plaintiffs repeat and reallege Paragraphs 1 through 111 and Paragraphs 239 to 254 of this Complaint as and for Paragraphs 255 of this Count XI as if fully set forth herein.

255.    Defendant Condé Nast is a global mass media company operating various brands, including Defendant The New Yorker.

256.    Defendant The New Yorker is an American weekly magazine publication owned and operated by Defendant Condé Nast.

257.    At all times relevant herein, Defendant The New Yorker was an agent of Condé Nast.

258.    At all times relevant herein, Defendant Peck was an agent of The New Yorker.

259.    At all times relevant herein, Defendant The New Yorker was an apparent agent of Condé Nast.

260.    At all times relevant herein, Defendant Peck was an apparent agent of The New Yorker.

261.    At all times relevant herein, The New Yorker was acting within the course and scope of its authority as an agent of Condé Nast.

262.    At all times relevant herein, The New Yorker was acting within the course and scope of its authority as an apparent agent of Condé Nast.

56

263.    The New Yorker has 6 million monthly readers, 16 million digital users, and 16.8 million social media followers.

264.    On August 18, 2021, The New Yorker, acting as an agent of Defendant Condé Nast, published Defendant Peck's article which reached millions of readers worldwide. (See Appendix A)

265.    Approximately one week prior to publication, Anna Boots, Fact Checker for The New Yorker, contacted Smietana regarding the article and stated:

   A.  That Peck's article was the longest fact checking she ever had to do (approximately 3 months);

   B.  That numerous unsubstantiated claims were made in Peck's article;

   C.  That Peck interviewed Michael Terpin regarding the 2018 Las Vegas conference and he informed her that Defendant Stephens was an unreliable source and a compulsive liar;

   D.  That the fact checking process was difficult to complete because almost all the information was provided two people, with most claims and statements being unsubstantiated; and

   E.  That her editor at The New Yorer set a "firm publication date regardless of [fact checking] completion."

266.    The New Yorker, acting within the scope of its agency, published Peck's article without properly and completely fact checking the defamatory statements made and checking Peck's sources and their credibility.

267. As a direct and proximate result of the libelous publication in The New Yorker, Plaintiffs suffered economic damage through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

268. As a direct and proximate result of the libelous publication in the New Yorker, Smietana suffered serious damage to his reputation, which resulted in numerous death threats, harrassment, and financial harm to his company.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants CONDÉ NAST d/b/a THE NEW YORKER and THE NEW YORKER, individually and as agent of CONDÉ NAST, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT XII
### Breach Of Fiduciary Duty Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz, F/K/A "Harro", Far Ahead Marketing, Llc., Joel Wayne Cuthriell F/K/A "Joel", Catherine Byerly, and Joshua Ogle and *UNKNOWN INDIVIDUALS AND COMPANIES*

269. Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 270 of this Count XII as if fully set forth herein.

270. At various times Defendants Stephens, Kunstman, Gevirtz, FAM, Cuthriell, Byerly, Leonard, and Ogle were acting as contractors hired by Plaintiffs to perform certain duties for the marketing of Skycoin.

271. Per that relationship and agreement, Defendants were to adhere to the terms of the agreements and provide the services promised.

272. Defendants instead engaged in various schemes to defraud Plaintiffs, including promising marketing and promotions materials that were never performed, implementing public schemes to damage Plaintiffs' reputation needing immediate marketing damage control, and providing marketing services below the quality and type of what was agreed upon.

273. Defendants did not provide the promised services to Plaintiffs, despite Plaintiffs having paid for those services.

274. Defendants had a duty to adhere to the terms of the agreements and to provide Plaintiffs with the promised services.

275. Defendants breached that duty by failing to adhere to the terms of the agreements and failing to provide Plaintiffs with the promised services.

276. As a direct and proximate result of Defendants' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz, F/K/A "Harro", Far Ahead Marketing, Llc., Joel Wayne Cuthriell F/K/A "Joel", Catherine Byerly, and Joshua Ogle and UNKNOWN INDIVIDUALS AND COMPANIES, and each of them, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

## COUNT XIII

## Breach of Contract Against Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", and Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou"

277.     Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 278 of this Count XIII as if fully set forth herein.

278.     On or about January 8, 2018, Plaintiffs entered into an agreement with Defendants Stephens, Gevirtz, Kunstman, and Cuthriell wherein these Defendants agreed to provide marketing services for Plaintiffs.

279.     Following that agreement, Defendant Stephens and Gevirtz failed to provide the contracted services, creating false "threats," and extorting funds from Plaintiffs through coercion.

280.     Defendants did not adhere to the terms of the Agreement despite payment.

281.     Plaintiffs, at all times relevant herein, fully performed on their obligations under the Agreements with Defendants.

282.     Defendants failed to provide any advertising or marketing services to Plaintiffs during the duration of the contract.

283.     Defendants breached their obligations under the contract through the following acts or omissions:

     A.  failing to provide advertising services;

     B.  Failing to provide marketing services;

     C.  failing to use the funds provided for the advertising or marketing services;

     D.  failing to provide web design services;

     E.  failing to use funds to effectuate any web design;

     F.  failing to stay within the bounds of the expense budget; and

     G.  attempting to extort additional funds outside of the contract terms.

284.    As a direct and proximate result of Defendants' improper actions, Plaintiffs have sustained damage economically through loss of business, loss of revenue, loss of contracts, loss of market visibility, and loss of reputation.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore Company, and SYMBOLIC ANALYTICS, INC., a Delaware Corporation ("SA"), by and through their attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo", and Joel Wayne Cuthriell f/k/a "JOEL", f/k/a "Caribou", and each of them, for an amount in excess of $75,000.00, and for such other and further relief as this Court may deem just and fair on the premises.

### COUNT XIV
### Violations 720 ILCS 5/12-7.1 Against Bradford Stephens, Aaron Kunstman, and Harrison Gevirtz f/k/a "HaRRo"

285.    Plaintiffs repeat and reallege Paragraphs 1 through 111 of this Complaint as and for Paragraph 286 of this Count XIV as if fully set forth herein.

286.    On information and belief, during the years 2019 – 2021, Defendants Stephens, Kunstman, and Gevirtz, through various internet media and in person, made numerous antisemetic statements and threats of death, kidnapping, and other acts of violence against Plaintiff Brandon Smietana.

287.    All of these threats were based on Smietana's religion and Jewish heritage.

288.    Defendants also discussed Company as a "Jew coin", called holders of Skycoin Tokens "Skygoyim",and other similar hate speech, which Smietana perceived as a direct threat due to his being Jewish. (See Appendix D)

289.   Defendants posted these messages on various social media platforms and also made said threats directly to Plaintiff.

290.   In furtherance of their treaths, Assailants invaded Smietana's home where they violently beat and tortured Smietana and his pregnant girlfriend for approximately six (6) hours in order to gain access to Smietana's computer systems, Skycoin's source code, Skycoin intellectual property, company accounts for operation of business, and cryptocurrency wallets.

291.   Under threats of further violence and death, Smietana provided the passwords to his computer. The Assailants stole 18.88 Bitcoin with a market value of $139,160.33 and 6,466 Skycoin with a market value of $81,018.98, totalling $220,179.31.

WHEREFORE, Plaintiffs, BRANDON SMIETANA ("Smietana"), by and through his attorneys, The Law Office of Michael C. Goode, respectfully pray that this Honorable Court enter a judgment against DEFENDANTS, Defendants Bradford Stephens, Aaron Kunstman, Harrison Gevirtz f/k/a "HaRRo,"and each of them, for an amount in excess of $75,000.00, punitive damages, and for such other and further relief as this Court may deem just and fair on the premises.

Respectfully Submitted,

**BRANDON SMIETANA,**
**SKYCOIN GLOBAL FOUNDATION**
**LIMITED, and SYMBOLIC ANALYTICS**

By:_____ /s/Michael C. Goode_____
          One of Their Attorneys

Michael C. Goode, Esq.
Michael C. Goode & Company
111 West Washington Street, Suite 1750
Chicago, Illinois 60602
lawoffice_mcgoode@yahoo.com